# IN THE UNITED STATES DISTRICT COURT OF MARYLAND
## NORTHERN DIVISON

**DR. MICHAEL L. HILL**
730 Bartlett Ave
Baltimore, Maryland 21218

    **PLAINTIFF**

V.

**CBAC GAMING, LLC**
d/b/a The Horseshoe Casino Baltimore
Serve: CSC-Lawyers Incorp.
7 St. Paul Street
Suite 820
Baltimore, Maryland 21202

AND

**THOMAS CASSELLA**
*In His Individual and Official Capacity*
135 East Summit Drive
Littlestown, Pennsylvania 17340

AND

**JERMAINE WRIGHT**
*In His Induvial and Official Capacity*
1525 Russell Street
Baltimore, Maryland 21230

AND

**CAESARS BALTIMORE MANAGEMENT COMPANY, LLC**
Serve: CSC-Lawyers, Inc
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

AND

**BALTIMORE CITY POLICE DEPARTMENT**
Serve: Andre Davis, City Solicitor
City Hall Room 101
100 N. Holiday Street

Civil Case No.:
**19-CV-695**
_____



Baltimore, Maryland 21202

**DEFENDANTS**

# FIRST AMENDED CIVIL COMPLAINT AND JURY TRIAL PRAYER

NOW COMES, Dr. Michael L. Hill ("Dr. Hill" or "Plaintiff", collectively), by his attorneys KIM PARKER, ESQUIRE and THE LAW OFFICES OF KIM PARKER, P.A., and sues the aforementioned Defendants and incorporates all previously filed complaints as if herein resated for reasons state:

## INTRODUCTORY STATEMENT

1. Corruption in the agencies charged with enforcing our laws not only threatens communities by allowing dangerous criminals to roam free, it also undermines the confidence of our citizens in law enforcement and the criminal justice system. The same is true with respect to judicial corruption. We must all, in our own countries, lead the fight to ensure integrity within our police and judicial systems." (*Former United States Attorney General John D. Ashcroft, in remarks to the Second Global Forum on Fighting Corruption*).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1343, in that this action, in part, arises under the Constitution of the United States and the Laws of the United States, and asserts a violation of civil rights secured by the Constitution of the United States and by Laws of the United States.

3. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b) because the Plaintiffs' causes of action arose within the State of Maryland.

## PARTIES

4. Plaintiff Dr. Michael Hill ("Dr. Hill" or "Plaintiff", collectively), is a citizen of the United States of America and resident of Baltimore City, Maryland. At all times relevant herein, Dr. Hill, was a business invitee at Defendants facility (hereinafter referred as the "Horseshoe Casino" or "Defendant", collectively).

5. At all times pertinent hereto, Defendant CBAC Gaming, LLC, (hereinafter "CBAC Gaming" or Defendant, respectfully) is a limited liability company organized under the laws of a State other than Maryland and maintains its principle place of business in Nevada.

6. At all times pertinent hereto, Defendant Caesars Baltimore Management Company, LLC (hereinafter "Caesars" or "Defendant", respectfully) is a limited liability company, with its principal office located in Nevada. Defendant is in the business of supervising, managing, and operating casinos throughout the United States, including the casino pertinent hereto which is where the events giving rise to Plaintiff's claims against Defendant arose, the Horseshoe Baltimore Casino, located at 1525 Russell Street, Baltimore, Maryland 21230.

~~7~~7. At all times penitent hereto, Defendant Baltimore City Police Department ("BCPD"), is an agency arm of the State of Maryland.

8. At all times pertinent hereto, Defendant Thomas Cassella ("Cassella" or "Defendant", respectfully), is the Director of Security for the Horseshoe Casino. He is being sued in his individual and official capacity.

~~8~~9. At all times pertinent hereto, Defendant Jermaine Wright ("Wright" or "Defendant", respectfully), is the Manager of Security for the Horseshoe Casino. He is being sued in his individual and official capacity.

~~9~~10. At all times pertinent hereto, Defendants were acting by and through its actual and/or apparent agents, servants, and/or employees for its supervising, managing, and operating

3

the Horseshoe Baltimore Casino, and is the owner of the Horseshoe Baltimore Casino. Thus, hereinafter, when the Horseshoe Baltimore Casino is referenced, the Horseshoe Baltimore Casino will also be referenced as "Defendant".

## STATEMENT OF FACTS

<del>10</del>11. On Sunday, March 6, 2016, the Plaintiff, was a business invitee at the Horseshoe Casino. Plaintiff was playing a "Spinning Wheel" game throughout the time that Plaintiff was in the Defendants establishment.

<del>11</del>12. At all times relevant herein, Plaintiff conducted himself in a professional and calm manner, did not engage in excessive drinking, smoking and to his knowledge violate any of the Defendants rules, policies and/or procedures. Upon information and belief, Plaintiff was in the Defendants establishment for over eight (8) hours spending his hard earned money patronizing Defendants casino.

<del>12</del>13. Plaintiff, and a gentleman he met while playing a card game, Stephen McLaurin ("Mr. McLaurin"), were pooling their monies together and placing bets to share in a larger pool of winnings.

<del>13</del>14. When Defendants employee (the "Dealer" or "Spinner", collectively) payed out the winning bets ("The Winning Pot"), Plaintiff observed an unidentified Spanish couple grabbing two piles of chips, another unidentified Spanish woman in a black leather jacket grab a pile and her friend grab the other file. An unidentified male who had been playing also, did not receive his winnings.

<del>14</del>15. Soon thereafter, the unidentified male disputed not receiving his winnings, and the Dealer called for assistance to resolve the issue. She was instructed by an unidentified employee to finish paying out the last winning pile, which was Plaintiff's and Mr. McLaurin's. The Plaintiff and Mr. McLaurin subsequently divided their respective winnings between each other.

4

~~15~~16. Plaintiff observed that the Spanish gentlemen subsequently relinquished the winnings he had picked up to the unidentified male but started complaining that he did not receive his share of the winnings, notwithstanding the fact, that the unidentified Spanish female who was with him had already took it. Plaintiff believed that the dispute had been resolved, and went downstairs to get some refreshments.

~~16~~17. As the Plaintiff was coming back upstairs to finish playing, he was approached by an unidentified African American uniformed male Baltimore City Police Officer, who informed Plaintiff that he was informed by his "Superior", later identified as Defendant Jermaine Wright, that he would need to accompany him to an office.

~~17~~18. Plaintiff requested to know what he had done to justify being detained, and the unidentified Officer directed Plaintiff to go down a hallway into a back room (the "Interrogation Room").

~~18~~19. When Plaintiff arrived in the interrogation room, he observed two males, identified as Defendant Wright and an unidentified Caucasian uniformed Baltimore City Police Officer.

~~19~~20. Defendant Wright demanded that the Plaintiff produce his drivers license, despite Plaintiff's protest and repeating that he had done nothing wrong. Based on the Baltimore City Police Officer being present and the way in which Defendant Wright was speaking to him, Plaintiff acceded to the request to provide identification and he provided his passport. Plaintiff observed the Defendant xeroxing his passport, including all the contents that were in the casing.

~~20~~21. Defendant Wright began tape recording Plaintiff's interrogation without Plaintiff's permission, and in violation of the Maryland Wiretapping and Electronic Surveillance laws.

~~21~~22. Defendant Wright accused Plaintiff of stealing another players money and admitted that he had not watched the recording, but, that when he did, and if he saw that Plaintiff had in fact stolen the players money, Defendant Wright would have him arrested.

2223. Plaintiff believed Defendant Wright had the authority to have him arrested based on the Baltimore City Police Officer being present, and actually witnessing several African American males being arrested in his presence, as discussed below. Moreover, the unidentified Police Officer had previously told Plaintiff that Defendant Wright was his superior.

2324. Plaintiff repeated what happened when he was playing the game with Mr. McLaurin, and denied, emphatically, that he had stolen any money.

2425. At some point during the interrogation, Defendant Cassella came into the interrogation room and requested Plaintiff's version of what happened. Plaintiff reiterated what he told Defendant Wright, declaring his innocence and requesting that they watch the video.

2426. Defendant Wright, in the presence of Defendant Cassella, continued screaming and accusing Plaintiff of theft; threatening him with jail, if he did not confess. Defendant Cassella did not intervene.

2527. Defendant Wright, through the unidentified officer, conducted a criminal warrant check on the Plaintiff, despite not having any evidence whatsoever that Plaintiff had committed a crime. Plaintiff informed Defendant Wright, Cassella and the Officer that he had no warrants or criminal convictions, and that he was educated and a professional. This did not dissuade them to desist from their illegal conduct. In fact, Defendants' Wright and Cassella began mockingly questioning the Plaintiff about his educational endeavors.

2628. Soon thereafter, Defendants' Wright and Cassella left the interrogation room to allegedly review the video tape footage. Plaintiff was left in the presence of the uniformed Baltimore City Officer.

2729. When Defendant Wright returned, he demanded that the Plaintiff pay him the funds he had won, or he would have "problems" with the Officer that was present. Plaintiff understood

that the mean he would be arrested. Plaintiff acceded to Defendant's Wright request and gave up his winnings of $105.00.

~~28~~30. Plaintiff requested if he could review the video tape footage because he did not think it was fair or reasonable for him to have to pay for his "freedom" when he did nothing wrong. Defendant Wright refused.

~~29~~31. Plaintiff requested that Defendants' Wright and Cassella accompany him to the table to speak with Mr. McLaurin who could attest that Plaintiff was telling the truth. They refused.

~~30~~32. Plaintiff was directed to go to a larger public room, that had a receptionist, security guard and Baltimore City Police Officer. While waiting, Plaintiff observed African American's being arrested, by various Caucasian Baltimore City Officers.

~~31~~33. About fifteen (15) minutes later, Defendant Wright brought a letter for Plaintiff to sign, barring him from the establishment for an alleged violation of Defendants rules.

~~32~~34. Plaintiff requested a receipt for the monies that Defendants' Wright and Cassella had illegally taken from him. After initially refusing, Defendant Wright provided Plaintiff a receipt demonstrating that he had taken $105.00.

~~33~~35. Defendants' Cassella and Wright escorted Plaintiff toward a door, while two (2) uniformed Caucasian Baltimore City Police Officers followed behind them. As they were walking down the hallway, Mr. McLaurin was walking toward them. Plaintiff requested that Mr. McLaurin explain to them what happened at the table. It was apparent at that point that Defendants' Wright nor Cassella had conducted an investigation into the allegations of theft.

~~34~~36. Mr. McLaurin attempted to explain what happened, and even requested that Defendant Wright go upstairs because the Spanish couple was still there, however, Defendant Wright cut him off, immediately, and did not allow him to finish.

~~35~~37. Plaintiff was escorted out of the building at around 4:50 a.m., without criminal charges, but with an unwarranted barring notice.

**LEGAL CLAIMS AGAINST DEFENDANTS**

**COUNT ONE**
**FALSE IMPRISONMENT**
**(ALL DEFENDANTS)**

~~36~~38. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if herein restated for reference.

~~37~~39. The use of a uniformed Baltimore City Police Officer compelled the Plaintiff to follow him to an interrogation room at the Horseshoe against the Plaintiff's wishes.

~~38~~40. Defendants deprived the Plaintiff of his liberty without the Plaintiff's consent and without legal justification.

~~39~~41. Defendants placed Plaintiff in an interrogation room, told the Plaintiff that he was not free to leave, and placed a uniformed Baltimore City Police Officer in the room, thereby restraining the Plaintiff from leaving the property.

~~40~~42. There were no reasonable means by which the Plaintiff could escape the confinement or freely leave.

~~41~~43. In this manner all of the Defendants deprived the Plaintiff of personal liberty without his consent and without legal justification.

~~42~~44. Defendants intentionally detained the Plaintiff, conducted criminal background checks, all while using a uniformed Baltimore City Police Officer as its agent.

~~43~~45. Defendants took this action even though they knew or had good reason to know that they did not have probable cause or legal authority to imprison the Plaintiff.

~~44~~46. Defendants intentionally with malice extorted a payment of $105.00 from the Plaintiff.

8

4547. The Defendants acted maliciously in accusing the Plaintiff of theft, because they knew or had good reason to know that such accusations were false.

4648. The Defendants determined that there was no probable cause to imprison the Plaintiff.

4749. The actions of the Defendants caused the Plaintiff to be unlawfully deprived of his liberty to leave the interrogation room of the casino.

4850. The Plaintiff was detained, against his will for at least 60 minutes.

4951. The Defendants actions were not supported by a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a curious man in believing the accused is guilty.

5052. Specifically, Defendants' Wright and Cassella, had access to surveillance video recordings that failed to establish, with any level of certainty, any legitimate basis for imprisoning the Plaintiff.

5153. As a result of the actions by the Defendants, Plaintiff suffered damage by being unlawfully held against his will for an extended period of time.

5254. Defendants acted deliberately with wrongful motive and with the intention to imprison the Plaintiff against his will.

WHEREFORE, Plaintiff respectfully request judgment against Defendants, severally liable, in the amount of $350,000, in compensatory damages, $1,000,000, in punitive damages, plus cost and his reasonable attorneys fees.

### COUNT TWO
### NEGLIGENCE
### (DEFENDANTS' CAESARS AND CBAC)

5355. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if herein restated for reference.

~~54~~56. An employment or other agency relationship existed between the Defendants' Caesars and CBAC, and Defendants' Wright and Cassella.

~~55~~57. As agents and employees, Defendants' Wright and Cassella, falsely arrested the Plaintiff, made defamatory statements, stole Plaintiff's winnings and otherwise violated his State and Federally protected constitutional rights.

~~56~~58. Defendants' owed a duty of care to Plaintiff with respect to the selection, hiring, training, supervision, and retention of its employees, such as Defendants' Wright and Cassalla, to prevent wrongful imprisonment, false arrest, and violations of the public, such as Plaintiff, State and Federally protected constitutional rights.

~~57~~59. Defendants' failed to use proper care in selecting, training, supervising or retaining Defendants' Wright and Cassella.

~~58~~60. Specifically, it has been reported, publicly in the new outlets that Defendant Cassella, in his capacity as Major of the Baltimore City Police Department, allegedly had at least two (2) indications of misconduct while in office, prior to his employment with the Defendants'. Specifically, it was reported, on March 11, 2003,

a) Defendant Cassella failed to conduct the proper investigation and he did not author an administrative report or an Internal Incident Report pertaining to this incident. An investigation was conducted for Misconduct and Neglect of Duty and were "**Sustained**".

b) The second infraction was, on February 2, 2006, Complainant alleged that Deputy Major Cassella and another Major were discriminating against him because of his race and created a hostile work environment. An investigation was conducted for Race Discrimination which was "**Sustained**".

https://foxbaltimore.com/news/local/concerns-raised-about-new-baltimore-police-commander;https://foxbaltimore.com/news/local/breaking-city-police-announce-change-

to-proposed-command-staff; https://www.wmar2news.com/news/region/baltimore-city/de-sousa-not-appointing-thomas-cassella-as-deputy-commissioner;.

~~59~~61. Defendants' knew or should have known by the exercise of diligence and reasonable care that Defendants' Wright and Cassella were capable of infliction harm of this type.

~~60~~62. As a result of this conduct, action and inaction of the Defendants', Plaintiff has suffered loss and damage including, but not limited to, loss of liberty, mental anguish, humiliation embarrassment and emotional distress.

WHEREFORE, Plaintiff respectfully request judgment against Defendants, severally liable, in the amount of $500,000, in compensatory damages, $5,000,000, in punitive damages, plus cost and his reasonable attorneys fees.

**COUNT THREE
VIOLATION OF 42 U.S.C. 1983
FOURTH AND FOURTEENTH AMENDEMENTS
(DEFENDANTS' WRIGHT AND CASSELLA)**

~~61~~63. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if herein restated for reference.

~~62~~64. At all times relevant to this Complaint, Plaintiff had rights afforded to him by the Fourth and Fourteenth Amendments to the United States Constitution not to have his person or property unlawfully searched, seized, or detained in a unreasonable manner and not to be deprived of his liberty without due process of the law.

~~63~~65. At all times relevant herein, Defendants' Wright and Cassella, in their individual capacities, were acting under the color of State and local law, when they utilized unidentified Baltimore City Police Officers, as their agents, in assisting them with, unlawfully detaining Plaintiff under the threat of arrest, wrongfully taking Plaintiff's winnings and otherwise preventing the Plaintiff from leaving, when they had no legitimate reason for his detention.

11

~~64~~66. Defendants' knowingly acted to deprive the Plaintiff of his constitutional rights maliciously and with reckless disregard of the same.

~~65~~67. Plaintiff claims damages under 42 U.S.C. 1983 against Defendants' Wright and Cassella for violation of his constitutional rights under color of law.

WHEREFORE, Plaintiff respectfully request judgment against Defendants, severally liable, in the amount of $150,000, in compensatory damages, $2,000,000, in punitive damages, plus cost and his reasonable attorneys fees.

## COUNT FOUR
## FALSE ARREST
## (DEFENDANTS' WRIGHT AND CASSELLA)

~~66~~68. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if herein restated for reference.

~~67~~69. Defendants' did not have a lawful authority or legal justification to compel Plaintiff to remain at the Horseshoe Interrogation Room. Because the initial detention was unlawful, and for reasons that ae independent from this ongoing course of conduct, Defendants' did not have any legitimate rational to believe that Plaintiff engaged in a crime, specifically the crime of theft and were therefore without lawful authority or adequate probable cause to detain/arrest the Plaintiff.

~~68~~70. The Plaintiff was nevertheless detained as described herein.

~~69~~71. The false arrest perpetrated by the Defendants' was made without warrant and without probable cause to support a lawful arrest.

~~70~~72. The conduct described herein, and attributed to the Defendants 'demonstrated ill will, improper motivation, and actual malice on the part of the Defendants'.

~~71~~73. As a direct consequence in result of the acts of the Defendants' described herein, the Plaintiff was deprived of his liberty.

~~72~~74. Plaintiff has also suffered additional injuries which are not expressly enumerated herein.

## COUNT FIVE
## VIOLATION OF MARYLAND DECLARATION OF RIGHTS
## (DEFENDANTS' WRIGHT AND CASSELLA)

~~73~~75. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if herein restated for reference.

~~74~~76. As a direct and proximate result of the actions and omissions of Defendants', described herein, all of which were committed under the color of their authority as members of the Security Department of Defendants Caesar, and as Supervisors of the unidentified Baltimore City Police Officers, described herein, Plaintiff was deprived of rights and immunities secured him under the Maryland Declaration of Rights-inasmuch as he seized, against his will and property taken without due process, in violation of Article 24.

~~75~~77. As a direct consequence and result of the actions and omissions of the Defendants' described herein, Plaintiff was deprived of his liberty and had his property taken.

WHEREFORE, Plaintiff respectfully request judgment against Defendants, severally liable, in the amount to be determined at trial, plus his cost and attorneys fees.

## COUNT SIX
## RACIAL DISCRIMINATION-ACCOMODATIONS
## (ALL DEFENDANTS)

~~76~~78. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if herein restated for reference.

~~77~~79. Plaintiff is African-American.

~~78~~80. On information and belief, considering the nature of the lack of any wrongdoing and lack of any reasonable basis for suspicion, Plaintiff was profiled and singled out for his race.

~~79~~81. Defendants' CBAC and Caesars constitutes a place of public accommodation.

<del>80</del>82. Defendants actions violate Title 42 of the United States Code.

<del>81</del>83. As a result of their violation of Title 42, Defendants are liable to Plaintiff for the injuries described above, attorneys fees, and punitive damages.

## COUNT SEVEN
## MARYLAND STATE DECLARATION OF RIGHTS AND LONGTIN CLAIM
## (DEFENDANTS CAESAR AND CBAC)

<del>82</del>84. Plaintiff incorporates the foregoing paragraphs as if herein restated for reference.

<del>83</del>85. Defendants' Wright and Casella's unlawful arrest, detention, false imprisonment, and the actual malicious character of the detention occurred as a direct result of a policy, custom, or usage of Defendants' Caesar and CBAC.

<del>84</del>86. Under this custom, practice, or usage, the Defendants Caesar and CBAC:

a) Encouraged, acquiesced in, or condoned the use of falsity to arrest, detain, and imprison members of the public, including Plaintiff;

b) Failed to adequately investigate, punish, or otherwise discourage the illegal detention of members of the public; and

c) Failed to adequately train and supervise the constitutionally permissible limits upon the proper way of effecting detentions, conducting investigations and otherwise not violating members of the public rights.

<del>85</del>87. By illegally seizing and detaining Plaintiff, Defendants abridged the rights, privileges and immunities guaranteed to Plaintiff under Articles 24 and 26 of the Maryland Declaration of Rights. Moreover, Plaintiff has suffered damages by being unlawfully held against his will, suffered damage to his reputation, and will continue to suffer severe emotional distress and anguish, loss of reputation, loss of income, and other damages.

WHEREFORE, Plaintiff prays judgment in an amount greater than $1,000,000, punitive damages $2,000,000, plus cost and his reasonable attorney's fees and cost.

# COUNT EIGHT
## UNDER 42 U.S.C. 1983 FOR INADEQUATE
## SUPERVISION AND DISCIPLINE
## (DEFENDANTS CAESAR AND CBAC)

~~86~~88. Plaintiff incorporates the foregoing paragraphs as if herein restated for reference.

~~87~~89. Defendants' Caesar and CBAC, through administration, specifically through supervisory personnel and through supervision of Baltimore City Police Officers when they are on their premises, are responsible for conducting internal investigations, investigating warrantless arrests, authorized, ratified, acquiesced to, perpetuated and otherwise failed to adequately correct the unlawful and improper conduct of Defendants' Wright and Cassella, identified herein.

~~88~~90. Defendants', failed to adequately supervise Defendants' Wright and Cassella and acquiesced to their unconstitutional practices, by among other things, permitting the unlawful detention of Plaintiff to continue unabated.

~~89~~91. The failure of Defendants' to properly supervise and control the conduct of Defendants' Wright and Cassella was a direct proximate cause of Plaintiff's injuries identified herein.

~~90~~92. At all times relevant to this Complaint, Defendants' had an actual and ready ability to shield Plaintiff from the continuing constitutional deprivations by way of supervision, corrective action and discipline aimed at Defendants' Wright and Cassella.

WHEREFORE, Plaintiff prays judgment in an amount greater than $1,000,000, punitive damages $5,000,000, plus cost and his reasonable attorney's fees.

# COUNT NINE
## SUPERVISORY LIABILITY-42 U.S.C. § 1983
## (CASSELLA)

~~91~~93. Plaintiff incorporates the foregoing paragraphs as if herein restated for reference.

~~92~~94. Plaintiff alleges on information and belief that Defendant, in his individual capacity, knew or reasonably should have known that their subordinates were engaging in these

acts and that their conduct would deprive Plaintiff of these rights, and, failed to prevent them from engaging in such conduct. Alternatively, Plaintiff allege that Defendant acquiesced in Plaintiff's Constitutional deprivations alleged herein or for conduct that showed a reckless or callous indifference to the rights of others.

~~93~~95. Defendant acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to Plaintiff's rights.

~~94~~96. Defendant misconduct was the moving force that caused Plaintiff's injuries.

WHEREFORE, Plaintiff prays judgment in an amount greater than $250,000, punitive damages $500,000 plus cost and her reasonable attorney's fees.

**COUNT TEN**
**CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS-42 U.S.C. § 1985**
**(DEFENDANTS BCPD, CAESAR & CBAC)**

97. Plaintiff incorporates the foregoing paragraphs as if herein restated for reference.

98. In doing the acts complained of herein, Defendants acted in concert and conspired to violate Plaintiff's federal civil rights to be free from unreasonable seizures.

99. Defendants had knowledge of the wrongs conspired to be done and committed and had the power to prevent or aid in preventing the commission of the same. None of the Defendants attempted to prevent and/or stop the violation of the Plaintiff's civil rights.

WHEREFORE, Plaintiff prays judgment in an amount to be determined at trial, plus his cost and attorneys fees.

**COUNT ELEVEN**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983 , 1985, AND 1988**
**(DEFENDANT BCPD)**

100. Plaintiff incorporates the foregoing paragraphs as if herein restated for reference.

101. Prior to March 6, 2016, BCPD developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Baltimore City and surrounding counties, which caused the violation of Plaintiff rights.

102. It was the policy and/or custom of BCPD to inadequately and improperly investigate warrantless arrests, citizen complaints of police misconduct, and unlawful warrantless arrests and acts of misconduct were instead tolerated by BCPD, including but not limited to episodes of misconduct involving members of The Horseshoe Casino Security Team.

103. It was further the policy and/or custom of BCPD to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

104. As a result of the above described policies and customs, police officers of the BCPD, believed that their actions would not be properly monitored by supervisory officials and that misconduct would not be investigated or sanctions, but would be tolerated.

105. The BCPD has an illegal policy, custom and/or practice wherein uniformed BCPD Police Officers are present in the security area of the Horseshoe Casino, while agents of the security team direct them to observe casino personnel interrogating invitees on allegations of theft, illegal counting of cards, etc, despite casino personnel not having probable cause, not mirandizing invitees, nor advising of right to counsel.

106. The above described policies and customs demonstrated a deliberate indifference on the part of policy makers of BCPD to the constitutional rights of persons within the BCPD and were the cause of the violations of Plaintiff's rights alleged herein.

WHEREFORE, Plaintiff hereby requests that this Honorable Court: (A) Award the Plaintiff actual, compensatory, and consequential damages in an amount to be determined at trial against Defendant BCPD; (B) Award Plaintiff punitive damages in an amount to be determined at trial; (C) Award costs of this action to the Plaintiff; (D) Award the Plaintiff reasonable attorney's fees and costs incurred in pursuing this action, as provided under 42 U.S.C. §§ 1983 and 1988; and (E) Award such other and further relief as this Court may deem just and appropriate.

**COUNT TWELVE**
**INJUNCTIVE RELIEF**
**(ALL DEFENDANTS)**

107. Plaintiff incorporates the foregoing paragraphs as if herein restated for reference.

108. The actions and conduct described herein is illegal and violated Plaintiff's constitutional rights.

109. The Defendant should be enjoined from engaging in similar behavior in the future.

WHEREFORE, Plaintiff respectfully request that this Court issued an Order enjoining the Defendant's from engaging in conduct that violates members of the public Federal and State constructional rights.

Respectfully Submitted,

THE LAW OFFICES OF KIM PARKER, P.A.

/s/ Kim Parker
_____
Kim Parker, Esquire
Fed. Bar No.:23894
2123 Maryland Avenue
Baltimore, Maryland 21218
410-234-2621
F: 410-234-2612
info@kimparkerlaw.com

COUNSEL FOR PLAINTIFF
DR. MICHAEL L. HILL

## JURY TRIAL PRAYER

Plaintiff prays for a jury trial on all counts stated herein.

/s/
_____
Kim Parker, Esq