**IN THE UNITED STATES DISTRICT COURT OF MARYLAND
NORTHERN DIVISON**

MICHAEL L. HILL

    **PLAINTIFF**

V.                                 Civil Case No.: **19-CV-695**

CBAC GAMING, LLC, *et al*

    **DEFENDANTS**

---

**MEMORANDUM OF LAW IN SUPPORT OF DENIAL OF
THE BALTIMORE POLICE DEPARTMENT'S
<u>MOTION TO DISMISS</u>**

Respectfully Submitted,
THE LAW OFFICES OF KIM PARKER, P.A.

/s/ Kim Parker

_____

Kim Parker, Esquire
Fed. Bar No.:23894
2123 Maryland Avenue
Baltimore, Maryland 21218
410-234-2621
F: 410-234-2612
info@kimparkerlaw.com
COUNSEL FOR PLAINTIFF
DR. MICHAEL L. HILL

**IN THE UNITED STATES DISTRICT COURT OF MARYLAND**
**NORTHERN DIVISON**

MICHAEL L. HILL

**PLAINTIFF**

V.

Civil Case No.: **19-CV-695**

CBAC GAMING, LLC, et al

**DEFENDANTS**

**TABLE OF AUTHORITIES**

**Cases**

565 U.S. 825 (2011)...........................................................................................................................11
85 F.3d 919 .......................................................................................................................................9
Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)........................................................................................8
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)..............................................................................8
Aziz v. Alcolac, Inc., 658 F.3d 388, 390 (4th Cir. 2011).................................................................4
Baker v. Cuomo, 58 F.3d 814 (2nd Cir. 1995..................................................................................9
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007 ............................................................8
Bey v. Shapiro Brown & Alt, LLP, 997 F. Supp. 2d 310, 312 n. 1 (D. Md. 2014), aff'd, 584 F. Appx. 135
    (4th Cir. 2014)...........................................................................................................................15
Blades v. Woods, 107 Md.App. 178, 667 A.2d 917, 918-19 (1995) .............................................13
Brown v. TSHAMBA, Civil Action No. RDB 11-00609 (D. Md. July 18, 2011) .......................14
Bumgardner v. Taylor, Civil Action No. RDB-18-1438 (D. Md. Mar. 28, 2019)........................16
Chin , 241 F. Supp. 2d 546, 548 .....................................................................................................16
Chin v. City of Baltimore, 241 F. Supp. 2d 546, 548 (D. Md. 2003) ......................................13, 14
Chin v. City of Baltimore, 241 F.Supp.2d 546, 548 (D.Md.2003) ................................................14
Conley v. Gibson, 355 U.S. 41, 45-46 (1957) .................................................................................8
Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp., 764 F.2d 619, 623 (9th Cir. 1985)..........9
Estate of Lagano v. Bergen County Prosecutor's Office, 769 F.3d 850, 854 (3d Cir. 2014) ........16
Gillespie v. Dimension Health Corp., 369 F. Supp. 2d 636, 640 (D. Md. 2005)............................8
Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) .....................4
Hector v. Weglein, 558 F. Supp. 194, 197-99 (D. Md. 1982));.....................................................14
Hector v. Weglein, 558 F. Supp. 194, 197-99 (D.Md.1982) .........................................................13
Hector v. Weglein, 558 F.Supp. 194 (D.Md.1982) (Kaufman, J.).................................................14
Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997)............................................................8
Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 ..........................................................................................13
Iqbal, 556 U.S. at 678, 129 S.Ct.1937 ...........................................................................................12
Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).............................................10
Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011), cert. denied ..................11
Kirksey v. R.J. Reynolds, 168 F.3d 1039, 1040-1 (7th Cir. 1999) .................................................9
Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006)......................................................................17
Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) .........................................................................10
McGary v. City of Portland, 386 F.3d 1259, 1270 (9th Cir. 2004.................................................9
Metts v. Murphy, 363 F.3d 8, 11 (1st Cir.2004)..............................................................................9

Munyiri v. Haduch, 585 F. Supp. 2d 670 (D. Md. 2008)................................................................14
Munyiri v. Haduch, 585 F. Supp. 2d 670, 676 (D. Md. 2008)......................................................14
Owens v. Baltimore City State's Attorneys Office,767 F.3d 379, 403 (4th Cir. 2014) .............13
Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). .........................................11
Randall v. Prince George's Cnty., 302 F.3d 188, 210 (4th Cir. 2002) .......................................10
Santara Va. Beach Gen. Hosp. v. LeBeau. 182 F.Supp.2d 518 (E.D. Va. 2002)........................9
Sciolino v. City of Newport News, 480 F.3d 642, 651 (4th Cir. 2007) .......................................17
Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987). ...........................................................11
Strickland-Lucas v. Citibank, N.A., 256 F. Supp.3d 616, 620 n. 3 (D. Md. 2017) ....................15
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002................................................................8
Twombly, 550 U.S. at 570, 127 S.Ct. 1955 .................................................................................13
West v. Atkins, 487 U.S. 42, 48 (1988). .....................................................................................10
Whetstone v. Mayor & City Council of Balt., No. ELH-18-738, 2019 WL 1200555, at * 12 (D. Md. Mar. 13, 2019) ...............................................................................................................13
Wilcher v. Curley, 519 F. Supp. 1 (D.Md.1980) .........................................................................13
Wright v. North Carolina, 787 F.3d 256, 262 (4th Cir. 2015) ......................................................9

**Statutes**
42 U.S.C. § 1983.........................................................................................................................10
42 U.S.C. § 1985.........................................................................................................................16

**Other Authorities**
5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1357 ......................................9
http://baltimorecitycouncil.com/content/hearing-police-commissioner-0 ...................................15
https://www.baltimoresun.com/maryland/baltimore-city/bs-md-police-commissioner-harrison-20190108-story.html ..........................................................................................................15

**Rules**
Federal Rule of Evidence 201 .....................................................................................................11
Rule 12(b)(6)..................................................................................................................................8
Rule 15(a)....................................................................................................................................17

**Regulations**
(P.L.L., 1969, §16-2.) (1966, ch. 203, §527. ..............................................................................15
Baltimore City Public Code § 16-2(b) .........................................................................................14
Baltimore City Public Laws § PL 16-5........................................................................................15

NOW COMES, Dr. Michael L. Hill ("Dr. Hill" or "Plaintiff", collectively), by and through his undersigned counsel and responds to the Baltimore City Police Departments ("BCPD" or "Defendant") Motion to Dismiss (the "Motion") and for reasons state:

## I.   STATEMENT OF PLAINTIFF'S WELL-PLEAD FACTS

The following facts can be gleaned from the Plaintiff's First Amended Complaint ("FAC"), and are assumed as true[1] for purposes of the Court's consideration of the BCPD's Motion:

On Sunday, March 6, 2016, the Plaintiff, was a business invitee at the Horseshoe Casino (hereinafter "Horseshoe" or "Casino", collectively). Plaintiff was playing a "Spinning Wheel" game (the "Game"), throughout the time that Plaintiff was in the Defendants establishment. At all times relevant herein, Plaintiff conducted himself in a professional and calm manner, did not engage in excessive drinking, smoking and to his knowledge violate any of the Horseshoe rules, policies and/or procedures. Upon information and belief, Plaintiff was at the Horseshoe for over eight (8) hours spending his hard-earned money patronizing the casino. Plaintiff, and a gentleman he met while playing a card game, Stephen McLaurin ("Mr. McLaurin"), were pooling their monies together and placing bets to share in a larger pool of winnings. FAC ¶11-13

When the Casino employee (the "Dealer" or "Spinner", collectively) payed out the winning bets ("The Winning Pot"), Plaintiff observed an unidentified Spanish couple grabbing two piles of chips, another unidentified Spanish woman in a black leather jacket grab a pile and her friend grab the other file. An unidentified male who had been playing also, did not receive his winnings. FAC ¶14

Soon thereafter, the unidentified male disputed not receiving his winnings, and the Dealer called for assistance to resolve the issue. She was instructed by an unidentified employee to finish

---

[1] In considering a motion to dismiss for failure to state a claim, the court "must assume the truth of all well-pleaded relevant and material facts as well as all inferences that reasonably can be drawn therefrom. This Court must construe all factual allegations in the light most favorable to the plaintiff. See *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). See also *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

paying out the last winning pile, which was Plaintiff's and Mr. McLaurin's. The Plaintiff and Mr. McLaurin subsequently divided their respective winnings between each other. Plaintiff observed that the Spanish gentlemen subsequently relinquished the winnings he had picked up to the unidentified male but started complaining that he did not receive his share of the winnings, notwithstanding the fact, that the unidentified Spanish female who was with him had already took it. Plaintiff believed that the dispute had been resolved and went downstairs to get some refreshments. FAC ¶15-16

As the Plaintiff was coming back upstairs to finish playing, he was approached by an unidentified African American uniformed male Baltimore City Police Officer ("BCPD"), who informed Plaintiff that he was informed by his "Superior", later identified as Defendant Jermaine Wright, that he would need to accompany him to an office. FAC ¶17

Plaintiff requested to know what he had done to justify being detained, and the unidentified Officer directed Plaintiff to go down a hallway into a back room (the "Interrogation Room"). When Plaintiff arrived in the interrogation room, he observed two males, identified as Defendant Wright and an unidentified Caucasian uniformed BCPD. Defendant Wright demanded that the Plaintiff produce his drivers license, despite Plaintiff's protest and repeating that he had done nothing wrong. Based on the BCPD being present and the way in which Defendant Wright was speaking to him, Plaintiff acceded to the request to provide identification and he provided his passport. Plaintiff observed the Defendant xeroxing his passport, including all the contents that were in the casing. Defendant Wright began tape recording Plaintiff's interrogation without Plaintiff's permission, and in violation of the Maryland Wiretapping and Electronic Surveillance laws ("MWESL"). Defendant Wright accused Plaintiff of stealing another players money and admitted that he had not watched the recording, but, that when he did, and if he saw that Plaintiff had in fact stolen the players money, Defendant Wright would have him arrested. FAC ¶18-23

Plaintiff believed Defendant Wright had the authority to have him arrested based on the BCPD being present, and actually witnessing several African American males being arrested in his presence, as discussed below. Moreover, the unidentified Police Officer had previously told Plaintiff that Defendant Wright was his superior. Plaintiff repeated what happened when he was playing the game with Mr. McLaurin, and denied, emphatically, that he had stolen any money. At some point during the interrogation, Defendant Cassella came into the interrogation room and requested Plaintiff's version of what happened. Plaintiff reiterated what he told Defendant Wright, declaring his innocence and requesting that they watch the video. Defendant Wright, in the presence of Defendant Cassella, continued screaming and accusing Plaintiff of theft; threatening him with jail, if he did not confess. Defendant Cassella did not intervene. Defendant Wright, through the unidentified officer, conducted a criminal warrant check on the Plaintiff, despite not having any evidence whatsoever that Plaintiff had committed a crime. Plaintiff informed Defendant Wright, Cassella and the Officer that he had no warrants or criminal convictions, and that he was educated and a professional. This did not dissuade them to desist from their illegal conduct. In fact, Defendants' Wright and Cassella began mockingly questioning the Plaintiff about his educational endeavors. FAC ¶23-27

Soon thereafter, Defendants' Wright and Cassella left the interrogation room to allegedly review the video tape footage.  Plaintiff was left in the presence of the uniformed Baltimore City Officer. When Defendant Wright returned, he demanded that the Plaintiff pay him the funds he had won, or he would have "problems" with the Officer that was present. Plaintiff understood that the mean he would be arrested. Plaintiff acceded to Defendant's Wright request and gave up his winnings of $105.00. Plaintiff requested if he could review the video tape footage because he did not think it was fair or reasonable for him to have to pay for his "freedom" when he did nothing wrong. Defendant Wright refused. Plaintiff requested that Defendants' Wright and Cassella

accompany him to the table to speak with Mr. McLaurin who could attest that Plaintiff was telling

the truth.  They refused. Plaintiff was directed to go to a larger public room, that had a receptionist,

security guard and Baltimore City Police Officer. While waiting, Plaintiff observed African

American's being arrested, by various Caucasian Baltimore City Officers. About fifteen (15)

minutes later, Defendant Wright brought a letter for Plaintiff to sign, barring him from the

establishment for an alleged violation of Defendants rules. FAC ¶24-33

Plaintiff requested a receipt for the monies that Defendants' Wright and Cassella had

illegally taken from him. After initially refusing, Defendant Wright provided Plaintiff a receipt

demonstrating that he had taken $105.00. Defendants' Cassella and Wright escorted Plaintiff

toward a door, while two (2) uniformed Caucasian Baltimore City Police Officers followed behind

them. As they were walking down the hallway, Mr. McLaurin was walking toward them. Plaintiff

requested that Mr. McLaurin explain to them what happened at the table. It was apparent at that

point that Defendants' Wright nor Cassella had conducted an investigation into the allegations of

theft. Mr. McLaurin attempted to explain what happened, and even requested that Defendant

Wright go upstairs because the Spanish couple was still there, however, Defendant Wright cut him

off, immediately, and did not allow him to finish. Plaintiff was escorted out of the building at

around 4:50 a.m., without criminal charges, but with an unwarranted barring notice. FAC ¶34-37

Plaintiff has suffered damages as a result of Defendants conduct.

## II.   STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." _Ibarra v. United States_, 120 F.3d 472, 474

(4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when

"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957). Furthermore, the court must "disregard the contrary allegations of the opposing party." _Gillespie v. Dimension Health Corp._, 369 F. Supp. 2d 636, 640 (D. Md. 2005).

A motion to dismiss for failure to state a claim for relief should not be granted if the complaint is plausible on its face. See _Ashcroft v. Iqbal_, 129 S. Ct. 1937, 1949 (2009) (citing _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Ashcroft v. Iqbal_, 129 S. Ct. 1937 (2009). Thus, the defendant must prove that plaintiff's complaint does not allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940.

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." _Swierkiewicz v. Sorema N.A._, 534 U.S. 506, 511 (2002). Indeed, plaintiffs should be given 'an opportunity to develop evidence before the merits are resolved.'" _Wright v. North Carolina_, 787 F.3d 256, 262 (4th Cir. 2015) (quoting _Metts v. Murphy_, 363 F.3d 8, 11 (1st Cir.2004)).

To the extent that it can be argued that the case presents a theory of liability against the Defendant that has not been fully tested, it should not be tested on the pleadings, but after sufficient development of the record. See _Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp._, 764 F.2d 619, 623 (9th Cir. 1985) and _McGary v. City of Portland_, 386 F.3d 1259, 1270 (9th Cir. 2004) ("the court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1357); _Kirksey v. R.J. Reynolds_, 168 F.3d 1039, 1040-1 (7th Cir. 1999) ("a claim should not be dismissed out of hand just because it is so novel

that it cannot be fitted into an existing legal category"); *Baker v. Cuomo*, 58 F.3d 814 (2nd Cir.

1995), vacated and reversed on other grounds, 85 F.3d 919; *Santara Va. Beach Gen. Hosp. v.*

*LeBeau*. 182 F.Supp.2d 518 (E.D. Va. 2002).

## III.   <u>LEGAL ARGUMENT</u>

Plaintiff has plead the specific factual basis supporting his causes of action against

Defendant BCPD. For the reasons stated herein, Defendant's pending dispositive motion should

accordingly be denied. Plaintiff respectfully requests that this honorable Court deny the motion

and commence with pretrial discovery.

### A) PLAINTIFF HAS STATED CLAIMS UNDER 42 U.S.C. 1983 AGAINST BCPD AND IS LIABLE FOR FAILURE TO CORRECT A CUSTOM THAT LEADS TO VIOLATIONS OF CONSTITUTIONAL RIGHTS.

The Defendant posits that it cannot be held liable under 42 U.S.C. 1983 because the statue

specifically carves out an exception for State agencies, such as the Defendant BCPD. Dr. Hill has

properly plead a claim against BCPD for failure to correct a policy and practice of BCPD Officer's

assisting Defendant Horseshoe Casino's Personnel with illegally detaining citizens, such as

Plaintiff, which, causes pervasive harm to the citizens of Maryland, and shocks the conscious in

violation of  42 U.S.C. § 1983. See FAC.

It is axiomatic, that to properly plead a claim under 42 U.S.C. § 1983, a plaintiff must

"allege the violation of a right secured by the Constitution and laws of the United States and must

show that the alleged deprivation was committed by a person acting under color of state law." *West*

*v. Atkins*, 487 U.S. 42, 48 (1988). Where there is suit against a municipal entity, there are additional

requirements. These are: (1) the existence of an official policy or custom that (2) is fairly

attributable to the municipality and (3) proximately caused the underlying constitutional violation.

*See <u>Jordan ex rel. Jordan v. Jackson</u>*, 15 F.3d 333, 338 (4th Cir. 1994). The policy or practice

attributable to the municipality can be established in several ways: "(1) through an express policy,

such as a written ordinance or regulation; (2) through the decisions of a person with final

policymaking authority; (3) through an omission, such as a failure to properly train officers, that

manifests a deliberate indifference to the rights of citizens; or (4) through a practice that is so

persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*,

326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted). To satisfy the last prong, the

plaintiff must allege that the unconstitutional police conduct was so pervasive as to imply that "'(1)

the municipality [had] actual or constructive knowledge of the custom and usage by its responsible

policymakers, and (2) there [was] a failure by those policymakers, as a matter of specific intent or

deliberate indifference, to correct or terminate the improper custom and usage.'" Id. (citing

*Randall v. Prince George's Cnty.*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks

omitted). The first prong of constructive knowledge can be evidenced by the fact that the practices

have become so widespread and flagrant that in the proper exercise of its official responsibilities

the governing body should have known of them. See *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th

Cir. 1987).

The BCPD has created what is known as a Mini-District at the Horseshoe Casino. In its

2015 Baltimore Casino Impact Funds Spending Plan Narrative[2], BCPD, stated:

- The BPD deployment plan is designed around having one supervisor and three officers per shift for the expected coverage. This deployment is 24/7. Police responsibilities in the area surrounding the casino will be rather broad. Unfortunately, the Police Department is currently unable to fully predict exactly what the public safety needs will be until the casino becomes operable and whether the resource allocation identified is sufficient. The Police Department will need to address crime caused by persons leaving the casino (robberies), vagrants around the casino, possible prostitution, traffic issues/accidents, etc. One of the Police' primary concerns is that the 24 hour liquor license will draw some of the unfavorable gang-affiliated crowds after the clubs/bars close at 02:00 AM. These individuals will be driving in vehicles and have been known to be armed. BPD needs to increase enforcement in the area surrounding the casino in order to ensure

---

[2] A court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011), cert. denied, 565 U.S. 825 (2011); Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

safety within the actual property of the casino. BPD is uncertain as to how its calls for service will be impacted. However, based on lessons learned elsewhere, BPD is certain that call volume will increase in the radius surrounding the casino. Although the casino will be hiring officers on the inside of the establishment, the officers in the [**mini-district** ]will need to be capable of providing a rapid response in order to assist those officers during a large scale issue or incident of violence. A lighter deployment will be needed starting in April and ramping up as the opening nears due to the dealers training and vendors working in the area. Report ¶ 6

Exhibit A

The BCPD has setup, according to them, a Mini Police Station at the Horseshoe Casino, thereby, unofficially making Defendant Caesar's Security Personnel, Pseudo Baltimore City Police Officers, with the full backing of the BCPD police force. Plaintiff argues in his Complaint that he reasonably believed that these pseudo police officers had full authority to make an arrest, to illegally detained him, to investigate crimes and to take away his liberty. FAC ¶23

In fact, Plaintiff alleges in his Complaint that the Defendant Wright, with the assistance of an unidentified Baltimore City Police Officer, conducted a criminal background check on him in an effort to coerce Plaintiff into admitting he committed some criminal offense. FAC ¶27

The Defendant argues that the Plaintiff has not plead a cognizable claim because he has not alleged an unconstitutional policy or custom of the Department. This Court, at least at the pleading's stage must accept the Complaint as true in a light most favorable to the Plaintiff. Plaintiff's FAC alleges that:

- Prior to March 6, 2016, BCPD developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Baltimore City and surrounding counties, which caused the violation of Plaintiff rights. FAC ¶101
- It was the policy and/or custom of BCPD to inadequately and improperly investigate warrantless arrests, citizen complaints of police misconduct, and unlawful warrantless arrests and acts of misconduct were instead tolerated by BCPD, including but not limited to episodes of misconduct involving members of The Horseshoe Casino Security Team. FAC ¶102.
- It was further the policy and/or custom of BCPD to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. FAC ¶103.
- As a result of the above described policies and customs, police officers of the BCPD, believed that their actions would not be properly monitored by supervisory

11

officials and that misconduct would not be investigated or sanctions, but would be tolerated. FAC ¶ 104.

- The BCPD has an illegal policy, custom and/or practice wherein uniformed BCPD Police Officers are present in the security area of the Horseshoe Casino, while agents of the security team direct them to observe casino personnel interrogating invitees on allegations of theft, illegal counting of cards, etc, despite casino personnel not having probable cause, not mirandizing invitees, nor advising of right to counsel. FAC ¶105.

- The above described policies and customs demonstrated a deliberate indifference on the part of policy makers of BCPD to the constitutional rights of persons within the BCPD and were the cause of the violations of Plaintiff's rights alleged herein. FAC ¶106.

The Defendant's Motion alleges that Plaintiff's FAC is not a [m]odel of clarity. Plaintiff, however, states that the recitation of facts need not be particularly detailed, and the chance of success need not be particularly high. See *Iqbal*, 556 U.S. at 678, 129 S.Ct.1937; *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. See <u>Owens v. Baltimore City State's Attorneys Office</u>,767 F.3d 379, 403 (4th Cir. 2014) (finding that Plaintiff sufficiently pled a Monell claim despite his" brief, but non-conclusory, allegations."). Plaintiff has stated sufficient facts to proceed to discovery.

## B) THE DEFENDANT IS A PERSON SUBJECT TO MONELL LIABILITY AND IS NOT ENTITLED TO ELEVENTH AMENDMENT IMMUNITY

The Defendant argues that it is not a person subject to *Monell*, because, according to the Defendant, it is an arm of the State, thus, specifically excluded. In support of this argument, Defendant cites several cases, which,  it purports to support its arguments on why this Court should dismiss Plaintiff well plead Complaint.. As will be discussed *infra*, the aforementioned cases are clearly distinguishable from the facts of this case, and are opposite to the majority view in this Court.

Defendant cites to *Whetstone v. Mayor & City Council of Balt*., No. ELH-18-738, 2019 WL 1200555, at * 12 (D. Md. Mar. 13, 2019), a case regarding an illegal traffic stop, which resulted in the Defendant's agents allegedly using excessive force. The Plaintiff brought suit under several theories of constitutional liability.  Although, the Court found that the Defendant is an arm

of the State, thus, not a person for purposes of Monell Liability; there are many cases reaching the opposite conclusion, specifically, in this Court.

Judge Blake found In *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003) that Defendant was so connected with the government of Baltimore City, that as a result, the Baltimore Police Department is a "person" subject to suit under § 1983. Judge Blake relied on Judge Kaufman's decisions in *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D.Md.1982); *Wilcher v. Curley*, 519 F. Supp. 1 (D.Md.1980) and *Blades v. Woods*, 107 Md.App. 178, 667 A.2d 917, 918-19 (1995), in support of her holding that the Defendant was liable under § 1983. Judge Blake's decision was not overturned on appeal and is still good precedent today.

Judge Bennett's decision in *Brown v. TSHAMBA, Civil Action No. RDB 11-00609 (D. Md. July 18, 2011)* he also found that:

> "Although the BPD is traditionally recognized as a state agency, this Court has held that "[t]he Police Department [is] connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment Immunity." Chin v. City of Baltimore, 241 F. Supp. 2d 546, 548 (D. Md. 2003) (citing Hector v. Weglein, 558 F. Supp. 194, 197-99 (D. Md. 1982)); see also Munyiri v. Haduch, 585 F. Supp. 2d 670, 676 (D. Md. 2008) (finding that the BPD may be held liable under § 1983). Therefore, the BPD is a "person" under § 1983 and may be found liable for violations of the statute".

Consequently, In Judge Davis' opinion in re: *Munyiri v. Haduch, 585 F. Supp. 2d 670 (D. Md. 2008),* he dismissed the BPCD Defendant for other reasons, however, he nevertheless found that:

> "Members of this court have found that it is not. Chin v. City of Baltimore, 241 F.Supp.2d 546, 548 (D.Md.2003) ("[t]he court determines that the Baltimore Police Department is not entitled to Eleventh Amendment immunity. As a result, the Baltimore Police Department is a `person' subject to suit under § 1983."); Hector v. Weglein, 558 F.Supp. 194 (D.Md.1982) (Kaufman, J.) (finding that the BCPD liable for suit under § 1983), and I agree with those determinations. Thus, the police defendants are fully subject to suit under § 1983".

The aforementioned decisions were sound and are still relevant to this Defendant today.

Moreover, for the reasons articulated *supra*, Defendant does not enjoy Eleventh Amendment

Immunity because the Defendant is still interconnected with the City's government. Specifically,

Baltimore City Public Code § 16-2(b) states that:

> "The department shall also perform the duties set forth in subsection (a) of this section within those areas, outside the corporate limits of the City of Baltimore, which are, from time to time, owned, controlled, operated or leased by the <u>Mayor and City Council of Baltimore</u>, or any agency, commission or department thereof".

> "In such areas, the authority and duties of the department <u>shall be concurrent</u> with that of any police department or police agency in the jurisdiction in which such areas are located, and nothing contained herein shall limit or adversely affect the jurisdiction and authority of any police department or police agency in the jurisdiction in which such areas are located".

In addition, the Mayor of Baltimore has exclusive authority to hire[3] and fire the BCPD

Police Commissioner. See Baltimore City Public Laws § PL 16-5. *See also* letter from Bernard

Young, Baltimore City Council President, to Former Mayor Catherine Pugh, regarding selecting

new Police Commissioner. Exhibit B. *See also* Baltimore City Council Notice of Public Hearing

for Police Commissioner.[4]

The Defendant cannot assert a good faith argument that its acts separately from the City of

Baltimore and that it is not interconnected.

Furthermore, this Court should also take judicial notice of the Consent Decree  entered into

by the United States Department of Justice ("DOJ"), The Mayor and City Council of Baltimore

---

[3] Baltimore Mayor Catherine Pugh on Tuesday named New Orleans police superintendent Michael Harrison as her latest pick to lead the city's beleaguered Police Department, saying his experience in reducing violence and introducing federally mandated policing reforms in The Big Easy would help him tackle similar challenges here.
Pugh said Harrison has "achieved clear, compelling and consistent results" in reducing violence while deploying "proactive and effective policing strategies that reflect 21st century, constitutional policing," and would bring the "insight and sensitivity needed to reestablish essential trust and confidence of citizens in their police officers."
https://www.baltimoresun.com/maryland/baltimore-city/bs-md-police-commissioner-harrison-20190108-story.html

[4] http://baltimorecitycouncil.com/content/hearing-police-commissioner-0

(the "City Council"), and the Defendant, where, Defendant and the City Council entered into

Consent Decree, "Collectively", addressing the pervasive discriminatory policing by the

Defendant. See Civil Docket Number 1:17-cv-00099-JKB[5]. See also Decree ¶1. Moreover, in the

Consent Decree, the City Council and Defendant are referenced collectively throughout the

agreement, as if one entity. See Decree ¶7,8,10 and signature page.

For these reasons, this Court should find that the majority view applies in this case and that

Defendant is a person subject to liability under § 1983 and that it does not enjoy Eleven

Amendment Immunity.

### C) PLAINTIFF HAS STATED CLAIMS AGAINST THE DEFENDANT UNDER 42 U.S.C. § 1985

The Plaintiff has set forth viable claims for violation of 42 U.S.C. § 1985 against the

Defendant. The crux of the Defendant's sole argument[6] is that it is not a person that can be sued

under § 1985. In support, in invites this Court to adopt the standard in See, e.g., *Estate of Lagano*

*v. Bergen County Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014), because, according to the

Defendant, it was unable to locate any authority from the Supreme Court or the Fourth Circuit

authorizing a suit against a local government unit pursuant to § 1985.

Plaintiff was able to locate a recent case in this Court, In re: *Bumgardner v. Taylor*, Civil

Action No. RDB-18-1438 (D. Md. Mar. 28, 2019). In that case the Defendant espoused the same

arguments that they have raised herein, that is, it cannot be sued under § 1985 because the "States

Supreme Court" nor the "United States Court of Appeals for The Fourth Circuit" have "[e]ver

recognized" a civil conspiracy claim against a municipal entity. Judge Bennett of this Court, found

---

[5] The Court may take judicial notice of court dockets in other proceedings, including state court proceedings. See, e.g., Bey v. Shapiro Brown & Alt, LLP, 997 F. Supp. 2d 310, 312 n. 1 (D. Md. 2014), aff'd, 584 F. Appx. 135 (4th Cir. 2014); see also Strickland-Lucas v. Citibank, N.A., 256 F. Supp.3d 616, 620 n. 3 (D. Md. 2017) (explaining judicial notice generally, including judicial notice of docket entries).
[6] See Defendant Motion Footnote ¶4

that the Plaintiff could in fact pursue a conspiracy claim under § 1985 against the Defendant. Judge

Bennet also found that:

> "Based on the principles articulated in Monell, this Court has determined that the BPD is
> a "person" subject to suit under § 1983".

Citing *Chin* , 241 F. Supp. 2d 546, 548.

The Defendant has limited its argument regarding Plaintiff's § 1985 claim to whether it

was a person subject to suit. Therefore, Plaintiff has articulated a cognizable claim against the

Defendant under § 1985 and this Court must deny its Motion as to Plaintiff's conspiracy claims.

### D) VOLUNTARY DISMISSAL OF FALSE IMPRISONMENT CLAIM AGAINST DEFENDANT BCPD

Plaintiff voluntarily dismisses his False Imprisonment Claim against the Defendant BCPD, only.

### E) PLAINTIFF SEEKS LEAVE TO AMEND HIS COMPLAINT.

The Defendant has argued, and if the Court finds that Plaintiff's Complaint is lacking in

factual substance, Plaintiff seeks leave to amend his Complaint accordingly.

Rule 15(a) requires that leave "shall be freely given when justice so requires. The United

States Court of Appeals for the Fourth Circuit has held that Rule 15 "gives effect to the federal

policy in favor of resolving cases on their merits instead of disposing of them on technicalities."

*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The court also held that "leave to amend a

pleading should be denied only when the amendment would be prejudicial to the opposing party,

there has been bad faith on the part of the moving party, or the amendment would have been futile."

Id. at 427; see also *Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007). This case

is in the infancy stages of litigation and no discovery has been conducted.

Judicial economy would be served by allowing Plaintiff to file a Second Amended

Complaint to address any procedural or factual deficiencies in his Complaint.

## IV.    CONCLUSION

Plaintiff has demonstrated that his Complaint states a claim for which relief could be granted against the Defendant and respectfully request that the Defendant's Motion be DENIED.

Respectfully Submitted,

THE LAW OFFICES OF KIM PARKER, P.A.

/s/ Kim Parker

_____

Kim Parker, Esquire
Fed. Bar No.:23894
2123 Maryland Avenue
Baltimore, Maryland 21218
410-234-2621
F: 410-234-2612
info@kimparkerlaw.com

COUNSEL FOR PLAINTIFF
DR. MICHAEL L. HILL