**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MICHAEL HILL,<br><br>*Plaintiff,*<br><br>v.<br><br>CBAC GAMING, LLC, *et al.*,<br><br>*Defendants.* | Case No.  19-CV-00695-DKC |

**REPLY IN SUPPORT OF BALTIMORE POLICE DEPARTMENT'S
<u>MOTION TO DISMISS</u>**

Plaintiff Michael Hill's Response and Opposition to the Baltimore City Police Department's Motion to Dismiss (ECF No. 35, "Response") does nothing to remedy the identified defects in his Amended Complaint (ECF No. 3, "FAC").  In his shotgun pleading, Plaintiff purports to assert various claims that either do not exist in this Circuit or cannot be maintained against a governmental entity like the Baltimore Police Department ("BPD" or "Department").  The one valid legal theory that Plaintiff invokes, Departmental liability pursuant to 42 U.S.C. § 1983 and the *Monell*[1] doctrine, is irredeemably bereft of factual allegations.  The FAC must be dismissed as to BPD pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails to state a claim upon which relief can be granted.

Even if the FAC properly pleaded a claim against BPD – which it does not – it would nonetheless have to be dismissed pursuant to Rule 12(b)(1) because the Baltimore Police Department ("BPD" or "Department") has immunity from suit pursuant to the Eleventh Amendment to the United States Constitution.

---

[1]    *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 683 (1978).

**I.    PLAINTIFF HAS NOT PLED A *MONELL* CLAIM.**

Plaintiff does not dispute that BPD cannot be held vicariously liable for civil rights violations of individual officers. Instead, he endeavors to defend the adequacy of his pleading as a *Monell* claim. While Plaintiff correctly states that "the recitation of facts need not be particularly detailed," Resp. at 12, he does have to plead facts demonstrating that his constitutional rights were violated and that the violation arises from a policy, custom or practice, of the BPD. The FAC simply lacks factual allegations concerning conduct by BPD and must be dismissed.

*A. Plaintiff's improperly proffered extrinsic documents should be disregarded and, in any event, are irrelevant to the sufficiency of his pleading.*

Plaintiff's Response tacitly acknowledges the inadequacy of his pleading by responding to the Motion to Dismiss – not with citations to his FAC – but with references to extrinsic "evidence." *See* Resp., Exh. A; Resp. at 10, n. 2 (purporting that Exhibit A is a "matter[] of public record" subject to judicial notice under Rule 201 of the Federal Rules of Evidence as an "adjudicative fact").

As a preliminary matter, the document attached to the Response as Exhibit A, but not appended or referred to in the FAC, is not properly before the Court. *Braun v. Maynard*, 652 F.3d 557, n. 1 (4th Cir. 2011) (rejecting consideration of materials attached to response in opposition to motion to dismiss because "[w]e generally do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6)…").

Apart from the general prohibition on extrinsic bolstering of a complaint in response to a Rule 12(b)(6) motion, Exhibit A should be disregarded because Plaintiff has offered no explanation or validation for it. *See* Resp., n. 2. What is the document and what ensures its authenticity? Who authored it? How can we know that this person speaks, or spoke at the time, for BPD? Where is it available to the public? What makes it a "matter of public record"? What

qualifies it as an "adjudicative fact"? The manner in which Plaintiff has presented this document raises more questions than it answers, and makes it impossible to know what, if any, importance or reliability can be assigned to it.

Further, even assuming that Exhibit A was an authentic document attributable to BPD, and properly the subject of judicial notice for purposes of refuting a Rule 12(b)(6) motion, it is not evident what probative value it has. Plaintiff purports that it was prepared in 2015, the year before the events at issue. Resp. at 10. It is evident from the language quoted by Plaintiff that the document prospectively suggests a deployment plan, acknowledging a host of unknown factors that might impact the ultimate implementation, and therefore cannot predict with any reliability the actual BPD presence in the area of the Horseshoe Casino ("Casino") in 2016. *Id.* at 10-11. Even if the Court could properly consider this new material, it sheds no light on the Department's personnel deployment in the vicinity of the Casino on March 6, 2016, much less the operative legal question of whether Plaintiff has properly stated a *Monell* claim.

Finally, if Plaintiff could overcome all of these bars to the introduction of Exhibit A, he still would not be entitled to absurd inferences from these improperly presented facts. For example, Plaintiff asserts that the existence of a "mini-district" at the Casino "unofficially [made] Defendant Caesar's Security Personnel, Pseudo Baltimore City Police Officers, with the full backing of the BCPD police force." Resp. at 10-11. Though a non-movant is entitled to the benefit of reasonable inferences that may be drawn from the facts, the Court is not required to indulge sheer fantasy. *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). Claims that "pseudo" BPD officers exist are preposterous, and should not be seriously entertained.

> *B. The six paragraphs of the FAC that Plaintiff points to as the basis for his* Monell *claim do not approach sufficient pleading.*

Returning to his FAC, Plaintiff next calls out what he purports to be the basis of his claim. Resp. at 11-12 (reproducing FAC, ¶¶ 101-106). Stripped of conclusory assertions and characterizations, these paragraphs fail to articulate even the most basic contours of a *Monell* claim, such as what constitutional violation Plaintiff allegedly suffered, who committed the violation, or what policy or practice of BPD caused it. *See* Memorandum in Support of Motion to Dismiss (ECF No. 19-1, "Motion") at 5-8. Plaintiff's bare recitation of a required element of his claim, asserting it to be satisfied without reference to any factual matter, does not meet his pleading burden.

Three of the paragraphs identified by Plaintiff as the basis of his claim make broad, vague allegations that BPD had a policy or custom that violated the Constitution. FAC, ¶¶ 101, 103, 106.[2] This Court has consistently held that a complaint must do more than "merely state in conclusory terms that the [defendant] failed 'to adequately train and supervise officers…'" *Ross v. Prince George's Cty., MD*, No. DKC 11-cv-1984, 2012 WL 1204087, at *9 (D. Md. Apr. 10, 2012) (continuing to describe as inadequate allegations that the defendant "'consistently failed' to investigate, discipline, and record acts of excessive force, thereby demonstrating 'gross disregard' for its citizens' Fourth Amendment rights and leading to his injuries."); *see also Peters v. City of*

---

[2]  Paragraph 101 reads: "Prior to March 6, 2016, BCPD developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Baltimore City and surrounding counties, which caused the violation of Plaintiff rights."

Paragraph 103 reads: "It was further the policy and/or custom of BCPD to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers."

Paragraph 106 reads: "The above described policies and customs demonstrated a deliberate indifference on the part of policy makers of BCPD to the constitutional rights of persons within the BCPD and were the cause of the violations of Plaintiff's rights alleged herein."

4

*Mount Rainier*, No. GJH-14-00955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014) (holding inadequate allegations that "the [defendant] maintained an 'official policy' of 'fail[ing] to use due care in the hiring of officers; fail [ing] to properly train and supervise its officers; fail[ing] to implement effective procedures for investigating allegations of police misconduct; fail[ing] to discipline officers who violate the Constitutional rights of private citizens through false arrests, malicious prosecutions, and brutal conduct; and generally fail[ing] to provide safeguards against Constitutional abuses by its overzealous officers.'"). Despite repeated referenced to "the above described policies or customs," no policy or custom of the BPD is identified in the FAC in more than generic terms.

A fourth paragraph cited by Plaintiff alleges that BPD had policies that resulted in inadequate or improper investigation of warrantless arrests and citizen complaints, and further, that these events, and "acts of misconduct" committed by BPD members and/or "members of The Horseshoe Casino Security Team" were tolerated by BPD. FAC, ¶ 102.[3] In addition to suffering from the same vagueness exhibited in Paragraphs 101, 103, and 106, Paragraph 102 apparently is surplusage because, by Plaintiff's own account, no warrantless arrest or citizen complaint occurred. Further, Plaintiff does not identify conduct by any BPD member amounting to a BPD policy violation (not that such a thing gives rise to a federal civil rights claim, even had it been pled). *See, e.g., May v. Solomon*, No. 5:14-CT-3318-FL, 2015 WL 2190880, at *3 (E.D.N.C. May 11, 2015), *aff'd*, 615 F. App'x 828 (4th Cir. 2015) ("violation of policy alone does not rise to the level of a constitutional violation"). Finally, absent the commission of a crime, Plaintiff identifies

---

[3] Paragraph 102 reads: "It was the policy and/or custom of BCPD to inadequately and improperly investigate warrantless arrests, citizen complaints of police misconduct, and unlawful warrantless arrests and acts of misconduct were instead tolerated by BCPD, including but not limited to episodes of misconduct involving members of The Horseshoe Casino Security Team."

no basis on which BPD would have authority to investigate Casino employees in the performance of their job duties, much less intervene in it.

The fifth paragraph that Plaintiff identifies purports to allege the beliefs of unidentified BPD officers (or perhaps all officers), in particular that they would not be supervised or held accountable for general misconduct.[4] Leaving aside the question of whether there could possibly exist a sufficient basis for this allegation, which was not even couched as being Plaintiff's "information and belief," Paragraph 104 does not allege any conduct whatsoever on the part of BPD.

Finally, Plaintiff contends that his *Monell* claim is grounded by FAC Paragraph 105, which alleges that BPD has a practice of having officers present in an area of the Casino where they observe Casino personnel interrogating "invitees" regarding various minor crimes and Casino rules violations and that, in these instances, Casino employees did not "hav[e] probable cause, mirandize[e] invitees, nor advis[e] of right to counsel."[5] This paragraph complains of various purported misconduct by Casino employees in which the alleged involvement of BPD officers is merely that they "observe" Casino employees' misdeeds. As a general matter, an individual officer has no liability under 42 U.S.C. § 1983 for failing to intervene in harms inflicted by private parties, much less is *Monell* liability countenanced in such a scenario. *See Graves v. Lioi*, No. 17-1848, 2019 WL 3143757, at *8 (4th Cir. July 16, 2019) (citing *DeShaney v. Winnebago Cty. Dep't of*

---

[4] Paragraph 104 reads: "As a result of the above described policies and customs, police officers of the BCPD, believed that their actions would not be properly monitored by supervisory officials and that misconduct would not be investigated or sanctions, but would be tolerated."

[5] Paragraph 105 reads: "The BCPD has an illegal policy, custom and/or practice wherein uniformed BCPD Police Officers are present in the security area of the Horseshoe Casino, while agents of the security team direct them to observe casino personnel interrogating invitees on allegations of theft, illegal counting of cards, etc, despite casino personnel not having probable cause, not mirandizing invitees, nor advising of right to counsel."

*Soc. Servs.*, 489 U.S. 189, 196 (1989) (state actors have no affirmative duty to protect life, liberty or property from private harm and cannot be held liable under 42 U.S.C. 1983 for failing to intervene and avert injuries to those interests).

In sum, the Response only reinforces that Plaintiff added BPD to his claim in the eleventh hour as an afterthought and, lacking legitimate claims against the Department, alleged vague and conclusory assertions of wrongdoing. Having pled no factual allegations that could support *Monell* liability, Plaintiff's claims against BPD fail *ab initio*. Accordingly, BPD should be dismissed.

**II.   PLAINTIFF'S FEDERAL CLAIMS CANNOT BE MAINTAINED AGAINST BPD AND ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY.**

Plaintiff offers no meaningful legal analysis but instead relies on outdated cases, inapposite block quotations, and the fact of the Consent Decree[6] to assert that his §§ 1983 and 1985 claims should be permitted to proceed. As explained in the Motion to Dismiss, it is not evident that a § 1985 claim can be maintained against a local government unit like the BPD in the Fourth Circuit. *See* Motion at 8. Assuming such a claim exists, the standard for properly pleading it surely requires more than broad assertions of collusion lacking even the most basic factual description of the supposed conspiracy. *See* FAC, ¶¶ 98-99. Further, had Plaintiff properly pled either a §§ 1983 or 1985 claim, his FAC still could not proceed because BPD is immune from such claims pursuant to the Eleventh Amendment and is not a "person" within the meaning of those statutes. *See* Motion at 8-14.

*A. Plaintiff has not stated a claim under § 1985, if such a claim even exists.*

As BPD explained in its Motion, no authority of the Supreme Court or the Fourth Circuit has authorized a § 1985 claim of the type Plaintiff asserts here. *See* Motion at 8. Plaintiff suggests

---

[6]   *United States v. Baltimore Police Dept., et al.*, No. 17-00099-JKB, ECF No. 2-2 (as modified by ECF No. 39).

that in a recent case, *Bumgardner v. Taylor*, No. 18-1438, Judge Bennett authorized a claim under 42 U.S.C. § 1985 to proceed against the BPD. *See* Resp. at 15-16. In fact, Judge Bennett "assum[ed], without deciding" that BPD is a "person" for purposes of §§ 1983 and 1985, and dismissed Bumgardner's claims under both statutes on other grounds. 2019 WL 1411059, at *6 (D. Md. Mar. 28, 2019) ("Plaintiff's §§ 1983 and 1985 claims asserted against the BPD are DISMISSED."). Further, Judge Bennett observed, as BPD has, that "[n]either the Supreme Court nor the Fourth Circuit have explicitly held that municipalities and local government units such as the BPD may be found liable under § 1985." *Id.*, *5. The claim should be dismissed because it does not exist in this jurisdiction.

To whatever extent that a § 1985 claim may proceed against a governmental entity like BPD, the standard for sufficient pleading surely would be more than a generic statement that defendants colluded to commit wrongdoing against plaintiff. The sum of Plaintiff's three-paragraph conspiracy count (Count X) consists of a blanket statement that "[d]efendants acted in concert and conspired to violate Plaintiff's federal civil rights…"[7] FAC, ¶ 98. To assert this novel theory of liability Plaintiff minimally would have to properly plead, among other things, facts from which it could be inferred that there existed a conspiracy including BPD. *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983)

---

[7] The remainder of Plaintiff's Count X is an allegation that BPD knew of and could have prevented wrongdoing against Plaintiff. FAC, ¶ 99. A law enforcement agency's failure to protect generally is not a basis to assert a constitutional tort. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989) ("our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests"); *Doe v. Rosa*, 795 F.3d 429, 440 (4th Cir. 2015) ("[T]here simply is 'no constitutional right to be protected by the state against ... criminals or madmen,'" and a state actor's "'failure to do so is not actionable under section 1983.'") (quoting *Fox v. Custis*, 712 F.2d 84, 88 (4th Cir. 1983)).

(articulating four elements to a § 1985 claim including conspiracy).  The FAC fails to do even that much.  It must be dismissed.

> B.  *BPD is not a "person" that can be sued under §§ 1983 or 1985 and enjoys Eleventh Amendment immunity.*

In the last year, the Fourth Circuit has at least twice held that a state and its agencies have Eleventh Amendment immunity where that state did not *specifically* and *expressly* waive its immunity from suit in federal court.  *See Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018), *cert. granted*, __ S. Ct. ___, No. 18-877 (June 3, 2019) (stating the Supreme Court made clear that "a State must expressly consent to suit in federal court to waive its immunity under the Eleventh Amendment"); *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 101 (4th Cir. 2019).

A state's waiver of Eleventh Amendment immunity may be "'accomplished by state statute, but ***only*** if the statute specif[ies] the State's intention to subject itself to suit in *federal court*.'"  *Pense*, 926 F.3d at 101 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)) (emphasis in original and added) (alteration in original).  Further, a general waiver of sovereign immunity is not enough.  *Id.* (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)).  Most recently, in *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, the Court was critical of the trial court's departure from the Supreme Court's directive in *Atascadero State Hosp. v. Scanlon*, in which the Supreme Court set forth a "stringent test" for finding a waiver of Eleventh Amendment immunity that requires "a clear declaration that [the state] intends to submit itself to [federal court] jurisdiction."  *Id.*  In *Pense*, the trial court erred in denying the state agency's motion to dismiss and relying "on a line of prior District of Maryland decisions concluding that the State, through a statutory consent to suit provision, ha[d] waived sovereign immunity as to [Maryland Fair Employment Practices Act] claims in the state and federal courts."  *Id.* at 100.  The applicable statutory consent to suit provision stated that the state

9

and its officers and agencies could not "raise sovereign immunity as a defense . . . under this title." *Id.* at 102 (citing MD. CODE ANN., STATE GOV'T, § 20-903). The Fourth Circuit held that "[i]n the absence of the State's '*express*[] consent to suit *in federal court*,'" the state agency was entitled to Eleventh Amendment protection. *Id.* (citing *Allen*, 895 F.3d at 347) (emphasis in original) (alterations in original and added).

Maryland's General Assembly has never waived BPD's Eleventh Amendment immunity with respect to any claims asserted in federal court. The Court should dismiss the FAC on this basis alone and need not go any further in its Eleventh Amendment immunity analysis. *Id.* ("We, however, need only decide this: In the absence of the State's '*express*[] consent to suit *in federal court*,' the Department is entitled to the protection of the Eleventh Amendment with respect to Pense's FEPA claims.") (citing *Allen*, 895 F.3d at 347-48) (emphasis in original).

The General Assembly has only waived BPD's immunity for very limited state law claims, only for the *limited* purpose of providing defenses and indemnity to employees who commit torts while in the scope of their employment. *See* Local Government Tort Claims Act ("LGTCA"), codified at MD. ANN. CODE, CTS. & JUD. PROC. ART., §§ 5-301, *et seq.* Applying the Fourth Circuit's analysis in *Allen v. Cooper* and *Pense*, the Court must follow the Supreme Court's "stringent test" set forth in *Atascadero*. The LGTCA does not contain "a clear declaration that [the state] intends to submit itself to [federal court] jurisdiction." *Pense*, 926 F.3d at 101. Rather, it only prevents BPD from deciding not to defend or indemnify an employee (unless the employee's conduct is outside the scope of employment).

In March 2019, this Court twice determined that the BPD is not subject to *Monell* liability because it is a state agency. *Whetstone v. Mayor & City Council of Balt.*, No. ELH-18-738, 2019 WL 1200555, at *12 (D. Md. Mar. 13, 2019) ("In the first instance, the claim against BPD is not

viable under *Monell*, as the BPD has been a State agency, not a local agency, since 1867. . . . As discussed, the BPD is a State agency and therefore not subject to a *Monell* claim."); *McDougald v. Spinnato*, No. ELH-17-2898, 2019 WL 1226344, at *10, 11 (D. Md. Mar. 15, 2019) ("If the BPD is an arm of the State, it is not a municipality subject to suit under *Monell*… Therefore, there is no basis for a *Monell* claim based on actions of the BPD."); *see also Garner v. Harper*, No. GLR-11-1919, 2012 WL 3263848, at *3 (D. Md. Aug. 8, 2012) ("Thus, Plaintiff's Complaint against the State of Maryland and the Baltimore City Police Department is barred by the Eleventh Amendment.").

Plaintiff does not attempt to address *Whetstone* or *McDougald*, but instead cites the Court to three cases, all of which predate *Whetstone, McDougald* and *Garner*, which Plaintiff purports stand for the proposition that, despite the Eleventh Amendment analysis, BPD is subject to suit under §§ 1983 and 1985 because of "connectedness" with Baltimore City.  *See* Resp. at 12-13 (citing *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003); *Brown v. Tshamba*, No. RDB 11-cv-00609 (D. Md. July 18, 2011); *Munyiri v. Haduch*, 585 F. Supp. 2d 670 (D. Md. 2008)).  Without detailing the reasons that the cited cases are ill-chosen to support Plaintiff's point, there is no basis in law nor fact for the proposition that BPD loses Eleventh Amendment immunity and is a "person" capable of being sued because BPD is not autonomous from the City.

Maryland courts have repeatedly reaffirmed BPD's status as a state agency and have emphasized that the City exercises no real power or control over BPD.  In *Mayor & City Council of Balt. v. Clark*, the Court of Appeals stated:

> The decisions of this Court concerning the liability of the City of Baltimore for the acts, activity and inaction of the Police Department, over which it has no power, *have been consistent and unequivocal*, premised on, and *holding uniformly*, that the Baltimore Police Department is an entity of the State, and not of the City of Baltimore.

404 Md. 13, 26 (2008). It is hard to imagine a stronger statement.[8] *See also Clea v. Mayor & City Council of Balt.*, 312 Md. 662, 668-69 (1988) (holding that BPD members are not City employees); *Taxicab Co. of Balt. City v. City of Balt.*, 118 Md. 359, 367 (1912) (noting that BPD officers "are paid by the City, it is true . . . but are not appointed as the agents or officers of the City government" and that while the City may pass regulations, "the enforcement of the regulation is entirely dependent upon a separate and independent police department, over which the City has no control"); *see also Balt. Police Dep't v. Cherkes*, 140 Md. App. 282 (2001) (reviewing Article 16 of the Code of Public Local Laws ("PLL") governing BPD's operation).

Indeed, the City is forbidden from meddling in BPD affairs, as that would "interfere with the powers of the Police Commissioner" in direct violation of the express edicts of the Baltimore City Charter, Art. II, § 27. The Court of Special Appeals found it particularly significant that:

> [t]he City Charter does not address the organization of the police department, or the appointment or removal of the Police Commissioner; the only reference to the Police Commissioner in the Charter is by way of limitation. Article II, which describes the general powers of the Mayor and City Council, states: To have and exercise within the limits of Baltimore City all the power commonly known as the Police Power to the same extent as the State has or could exercise said power within said limits; **provided, however, that no ordinance of the City or act of any municipal officer shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner**.[9]

---

[8] Or perhaps it is not so hard to imagine. Maryland law is replete with such statements regarding the status of BPD, dating back more than a century. *See, e.g.*, *Upshur v. Mayor, etc., of City of Balt.*, 94 Md. 743, 756 (1902) (emphasis added) (". . . Acts of 1860, ch. 7, completely separat[ed] the police department from the city government . . . The police board was created and its members, and the force enrolled by them, were made state officers; and the city was denied, in the most positive manner, any right to interfere with or control the policemen. The underlying purpose was to deprive the city of all power over the police.").

[9] It is not apparent what Plaintiff intended to be the import of a block quote from the PLL which establishes that, where the City owns or controls property outside the City limits, BPD's jurisdiction on that property is concurrent with that of the law enforcement agency for the jurisdiction in which the property is located. Resp. at 14 (quoting PLL, § 16-2). In any event, that provision of the PLL expressly cannot be read in conflict with the Police Commissioner's autonomy over the BPD as established by the City Charter.

12

*Clark v. O'Malley*, 169 Md. App. 408, 428 (2006) (citing Baltimore City Charter, Art. II, § 27) (emphasis added). While Plaintiff makes much of the Mayor's authority hire and fire the Police Commissioner, Resp. at 14, the *Clark* court was untroubled by acknowledging that reality while still finding that "[t]he Baltimore City Police Department is a State agency" and "[t]he Mayor enjoys no inherent authority over the department or the office of Police Commissioner." *Id.* at 436.

Plaintiff's final effort to overcome the mountain of legal authority establishing BPD's status as a state agency entitled to Eleventh Amendment immunity is to invoke the Consent Decree, Resp. at 14-15, which the United States Department of Justice ("DOJ"), the Mayor and City Council of Baltimore, and the BPD all signed as separate parties. *United States v. Baltimore Police Dept., et al.*, No. 17-00099-JKB, ECF No. 2-2 (as modified by ECF No. 39) ("Consent Decree" or "Decree"). Although BPD and the City are co-defendants in that litigation, that fact hardly merges their existence[10] and certainly does not extinguish BPD's status as a state agency.

As the City has no legal authority to direct BPD, and in fact is expressly prohibited from interfering with the person who does have such authority, Maryland law makes it clear that the City "has no power" over BPD. *Mayor & City Council of Balt. v. Clark*, 404 Md. at 26. As such,

---

[10]   Plaintiff's use of the quoted term "collectively" while citing to the Consent Decree to suggest that the Decree treats BPD and the City as a single entity is misleading. The Decree uses the term "collectively" only once in a manner that groups BPD with the City, and that one instance is defining the term "Parties" to include BPD, the City, *and* the United States. Consent Decree, ¶ 1. Further, while the work of reform often requires collaboration between the City and BPD, the Consent Decree plainly contemplates distinct roles and responsibilities for BPD and the City. *See, e.g.*, *id.*, ¶ 11 (requiring the City, without the involvement of BPD, to establish a Community Oversight Task Force), ¶ 97 (requiring the City, without the involvement of BPD, to coordinate with the Collaborative Planning and Implementation Committee to conduct and assessment to identify gaps in the behavioral health system); ¶¶ 16-18, 27-86; 87-95; 123-217 (requiring BPD to undertake various actions, without the involvement of the City, pertaining to Community Policing and Engagement, Stops, Searches, and Arrests, Fair and Impartial Policing, and Use of Force).

BPD is not a "person" capable of being sued under §§ 1983 or 1985[11] and is entitled to Eleventh Amendment immunity. Therefore, this Court should dismiss with prejudice all claims against BPD.

### III. REPLEADING WOULD BE FUTILE AND THE CLAIMS AGAINST BPD SHOULD BE DISMISSED.

Plaintiff requests (but does not move for) leave to amend his FAC, suggesting that its defects are merely procedural and can be ameliorated by additional window dressing. Resp. at 16. This request should be denied because the flaws in Plaintiff's claims against BPD are fundamental and cannot be cured by more artful pleading. It simply is not possible to massage Plaintiff's grievances with the Casino and its staff – in which the Department had no part – into a constitutional tort for which BPD should be held liable. Plaintiff has given no indication that a factual basis exists to plead any claim against the BPD and, even if one could be articulated, it would still be barred by BPD's Eleventh Amendment immunity. *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 538 (1st Cir. 2011) (leave properly denied where plaintiff was unable to demonstrate liability in the course of seeking leave to amend); *Hutsell v. Sayre*, 5 F.3d 996, 1006 (6th Cir. 1993) (repleading would be futile where immunity applies).

Additionally, BPD would be prejudiced by giving Plaintiff a third bite at the apple. *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) ("A motion to amend under Rule 15(a) may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant."). The Department was added to this case by amendment on the eve of the limitations period expiring with claims that lack any factual substance. ECF No. 3. *Jafree v.*

---

[11] As in the Motion, BPD has focused here on §1983 authority addressing the scope of the term "person" because no § 1985 claim has ever been authorized against a local government unit in the Fourth Circuit, and those jurisdictions that have permitted such claims have assumed that "person" carries the same meaning in both statutes. *See, e.g., Estate of Lagano v. Bergen County Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014).

*Barber*, 689 F.2d 640, 644 (7th Cir. 1982) (denial of leave to amend is appropriate where the "first amended complaint completely failed to suggest a factual predicate to support the crux of [Plaintiff's] claims."). Any further-amended claim that Plaintiff might file would amount to an end run around the limitations period and would serve to extend the life of this frivolous suit. *United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("it is unjust to fail to put the adversary on notice to defend within a specified period of time").

Date: 7/23/19

        Respectfully Submitted,

        Andre M. Davis
        City Solicitor

        /s/

        Elisabeth S. Walden, Bar No. 28684
        Baltimore City Department of Law
        100 N. Holliday Street, Room 101
        Baltimore, Maryland 21202
        (443) 605-3107
        lisa.walden@baltimorepolice.org

        *Counsel for Baltimore Police Department*