IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. MICHAEL HILL                    :
                                    :
    v.                              :   Civil Action No. DKC 19-0695
                                    :
CBAC GAMING LLC d/b/a The           :
Horseshoe Casino Baltimore,         :
et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case are the motion for entry of default filed by Dr. Michael Hill ("Plaintiff"), (ECF No. 16), and the motion to dismiss filed by Defendant Baltimore Police Department ("Defendant BPD"), (ECF No. 19). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for entry of default will be denied and the motion to dismiss will be denied in part and granted in part.

I. **Factual Background**

Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to Plaintiff.

This case arises out of a gambling dispute at the Horseshoe Casino Baltimore. The Horseshoe Casino Baltimore is the business name of Defendant CBAC Gaming LLC ("Defendant CBAC Gaming"). Defendant Caesars Baltimore Management Company, LLC ("Defendant

Caesars") supervises, manages, and operates casinos throughout the United States, including the Horseshoe Casino Baltimore. Mr. Thomas Cassella ("Defendant Cassella") is the Director of Security and Mr. Jermaine Wright ("Defendant Wright") is the Manager of Security for the Horseshoe Casino Baltimore.

On March 6, 2016, Plaintiff visited the Horseshoe Casino Baltimore. Plaintiff and another individual, Mr. Stephen McLaurin, were pooling their money and placing bets together. When a casino employee ("the dealer") began to pay out the winning bets, one casino patron, an unidentified male, did not receive his winnings. The casino patron complained, and the dealer called for assistance. Another casino employee instructed the dealer to pay the last winning pile, which belonged to Mr. McLaurin and Plaintiff. Mr. McLaurin and Plaintiff divided their winnings and Plaintiff went for refreshments. Plaintiff's share totaled $105.

When Plaintiff returned to the table, an unidentified, uniformed Baltimore Police Department ("BPD") officer ("BPD Officer A") approached Plaintiff and instructed Plaintiff to accompany him to an office.[1] BPD Officer A indicated that his superior, later identified as Defendant Wright, instructed him to take Plaintiff to the office. Plaintiff asked "what he had done

---

[1] Plaintiff identifies BPD Officer A as African American.

to justify being detained, and [BPD Officer A] directed Plaintiff to go down a hallway into a back room[.]" (ECF No. 3, at 5 ¶ 18).

When Plaintiff reached the designated room, he encountered Defendant Wright and a second, unidentified, uniformed BPD Officer ("BPD Officer B").[2] Defendant Wright requested identification and Plaintiff produced his passport. Defendant Wright "accused Plaintiff of stealing another player[']s money." (ECF No. 3, at 5 ¶ 22). While Defendant Wright questioned Plaintiff, Plaintiff believed Defendant Wright had the authority to have him arrested based on BPD Officer B's presence and BPD Officer A's identification of Defendant Wright as a superior. Defendant Cassella subsequently entered the room and asked for Plaintiff's version of the events. Defendant Wright, through BPD Officer B, conducted a criminal warrant check on Plaintiff. Defendants Cassella and Wright left the room to review video tape footage, leaving Plaintiff with BPD Officer B. When Defendant Wright returned, he demanded that Plaintiff surrender his winnings and suggested Plaintiff "would have 'problems'" with BPD Officer B if he did not do so. (*Id.*, at 6 ¶ 29). Plaintiff gave Defendant Wright his winnings.

Plaintiff asked to review the video tape footage, but Defendants Cassella and Wright refused his request. Plaintiff

---

[2] Plaintiff identifies BPD Officer B as Caucasian.

asked Defendants Cassella and Wright to accompany him to speak to Mr. McLaurin, but they refused. "Plaintiff was directed to go to a larger public room, that had a receptionist, security guard," and another BPD officer. (ECF No. 3, at 7 ¶ 32). In the larger room, Plaintiff observed "African American[]s being arrested[] by various Caucasian" BPD officers. (*Id.*).

Defendant Wright brought Plaintiff a letter, barring him from the Horseshoe Casino Baltimore, and asked Plaintiff to sign it. Plaintiff received a receipt for the money he relinquished to Defendant Wright, despite Defendant Wright's initial refusal to provide one. Defendants Cassella and Wright escorted Plaintiff to an exit, followed by two Caucasian BPD officers. While exiting, they encountered Mr. McLaurin. He attempted to explain the incident and asked that Defendant Wright speak to another couple that was present at the table. Defendant Wright continued to escort Plaintiff to the exit and Plaintiff left the building "around 4:50 a.m., without criminal charges, but with" a barring notice. (ECF No. 3, at 8 ¶ 37).

## II. Procedural Background

On March 6, 2019, Plaintiff filed a complaint against Defendant CBAC Gaming, LLC, Defendant Caesars, Defendant Cassella, and Defendant Wright (collectively, the "Casino Defendants"). (ECF No. 1). The complaint asserted nine causes of action. That same day, Plaintiff filed a first amended complaint to add

Defendant BPD as a defendant and to assert three additional causes of action. (ECF No. 3).

**III. Motion for Entry of Default**

On June 10, 2019, Plaintiff filed the presently pending motion for entry of default. (ECF No. 16). Plaintiff contends that Defendant BPD "was served with the [s]ummons and [c]omplaint on May 17, 2019" and failed to file a responsive pleading by the due date – June 7, 2019. (*Id.*, at 1).

On June 12, 2019, Defendant BPD responded to Plaintiff's motion. (ECF No. 18). Defendant BPD contends that Plaintiff's service was deficient because Plaintiff served the summons and complaint by certified mail return receipt requested and not by certified mail requesting restricted delivery, as required for serving local or state governmental organizations under Fed.R.Civ.P. 4(j)(2) and Md. Rule 2-121(a). (*Id.*, at 1–2 ¶¶ 2–9). Defendant BPD elaborates that Plaintiff did not seek "a waiver of service[.]" (*Id.*, at 2 ¶ 10). Nonetheless, Defendant BPD waived service and filed its motion to dismiss. (*Id.*, at 2).

Plaintiff did not reply to Defendant BPD's response. The motion for entry of default will be denied. The court need not address Defendant BPD's argument regarding effectuation of service because Plaintiff seemingly concedes it. Moreover, even if Plaintiff did effectuate service properly, Defendant BPD filed its motion to dismiss only five days after the initial due date and

5

there is a "strong policy that cases be decided on their merits[]" within the United States Court of Appeals for the Fourth Circuit. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).

**IV. Motion to Dismiss**

On June 12, 2019, Defendant BPD filed the presently pending motion to dismiss. (ECF No. 19). Plaintiff filed a response, (ECF No. 35), and Defendant BPD replied, (ECF No. 36).

    **A. Standards of Review**

Defendant BPD seeks dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), or alternatively, for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

A motion to dismiss under Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In the context of such a motion, courts should "regard the pleadings as mere evidence on the issue," and "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac*, 945 F.2d at 768-69.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint." *Abadian v. Lee*, 117 F.Supp.2d 481, 485 (D.Md. 2000). The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action." *Id.* (citing *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748,

7

749 (D.Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). When doing so, the court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleadings." *See* Fed.R.Civ.P. 12(d) ("If, on a [12(b)(6) motion to dismiss], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998) (citing Rule 12(d)); *Luy v. Balt. Police Dep't*, 326 F.Supp.2d 682, 688 (D.Md. 2004) ("The court may consider a document submitted by the defendant in support of a motion to dismiss, however, '[if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'") (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

Plaintiff did not attach any exhibits to his first amended complaint. However, in his response to Defendant BPD's motion to dismiss, Plaintiff attaches two exhibits: (1) Exhibit A – 2015 Baltimore Casino Impact Funds Spending Plan Narrative and (2) Exhibit B – Baltimore City Council Notice of Public Hearing for Police Commissioner. (ECF Nos. 35-2; 35-3). Defendant BPD argues that the exhibits are improperly proffered extrinsic evidence and objects to their consideration. (ECF No. 36, at 2-3). The court will consider the exhibits for the Fed.R.Civ.P. 12(b)(1) analysis

but will not consider the exhibits for the Fed.R.Civ.P. 12(b)(6) analysis because they are not integral to the complaint.

**B.  Eleventh Amendment Immunity**

Defendant BPD argues that it is not a "person" within the meaning of 42 U.S.C. § 1983 and, relatedly, that the Eleventh Amendment bars Plaintiff's claim against it.  (ECF No. 19-1, at 8–14.  Plaintiff disagrees, arguing that Defendant BPD is a person under § 1983 and is not immune under the Eleventh Amendment.  (ECF No. 35, at 12–15).

Historically, some uncertainty existed regarding whether sovereign immunity is grounds for dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) or for failure to state a claim under Fed.R.Civ.P. 12(b)(6).  Before the Fourth Circuit clarified the issue, judges in this district favored analysis under Fed.R.Civ.P. 12(b)(1) because immunity "functions 'as a block on the exercise of that jurisdiction.'"  *Gross v. Morgan State Univ.*, 308 F.Supp.3d 861, 865 (D.Md. 2018) (quoting *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995)).  This practice recognized the "considerable differences between Eleventh Amendment immunity and federal jurisdiction[,]" including: (1) the obligation of federal courts to evaluate subject matter jurisdiction independent of the parties' contentions compared to the discretion of federal courts to raise Eleventh Amendment immunity; (2) the states' ability to waive Eleventh Amendment

9

immunity in certain circumstances compared to the parties' inability, by their actions, to confer subject matter jurisdiction on a federal court; and, (3) Congress's ability to abrogate states' Eleventh Amendment immunity compared to Congress's inability to override a constitutional limitation on the subject matter jurisdiction of the federal courts. *Biggs*, 66 F.3d at 60. Recently, in the context of derivative sovereign immunity for government contractors, the Fourth Circuit stated that "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)) (quotation marks omitted).

Under § 1983, a plaintiff may file suit against any "person who, under color of [law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"  In *Monell v. Dep't of Soc. Servs.*, the Supreme Court determined that local government units are "persons" and may therefore be liable under § 1983.  436 U.S. 658, 690 (1978). Under the Eleventh Amendment, state agencies generally enjoy immunity from suits brought in

federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).

Thus, the key inquiry regarding Defendant BPD's immunity is "whether the BPD is a State agency or a local one for purposes of the Eleventh Amendment." *Grim v. Balt. Police Dep't*, No. 18-3864, 2019 WL 5865561, at *13 (D.Md. Nov. 8, 2019). To determine whether an entity is sufficiently connected to a state for Eleventh Amendment immunity purposes, courts engage in an "arm-of-the-State" analysis. The arm-of-the-State analysis directs courts to examine four nonexclusive factors without giving preeminence to any single factor. *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 395 n.5 (4th Cir. 2014). The factors are:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;
>
> (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;
>
> (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and
>
> (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

*U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012). Defendant BPD argues that it

is a State agency, not an agency of the City of Baltimore. (ECF No. 19-1, at 8-14). Defendant BPD relies on two cases from this district, *Whetstone v. Mayor & City Council of Balt.*, No. 18-738-ELH, 2019 WL 1200555 (D.Md. Mar. 13, 2019) and *McDougald v. Spinnato*, No. 17-2898-ELH, 2019 WL 1226344 (D.Md. Mar. 15, 2019), to support its argument. In *Whetstone* and *Spinnato*, Judge Hollander observed that BPD is a State agency and stated that *Monell* claims against BPD were therefore not viable. *Whetstone*, No. 18-738-ELH, 2019 WL 1200555 at *12 ("In the first instance, the claim against the BPD is not viable under *Monell*, as the BPD has been a State agency, not a local agency, since 1867."); *Spinnato*, No. 17-2898-ELH, 2019 WL 1226344 at *10 ("Under Maryland law, the BPD has been a State agency, not a local agency, since 1867. If the BPD is an arm of the State, it is not subject to suit under *Monell*."). Defendant BPD relies on these exact statements in its papers. (ECF No. 19-1, at 8, 14; ECF No. 36, at 10-11).

Critically, Judge Hollander subsequently characterized the *Whetstone* and *Spinnato* language as dicta, and erroneous, and concluded that the BPD does not enjoy Eleventh Amendment immunity:

> However, defendants here place more weight on *Whetstone* and *Spinnato* than those cases should bear. In both cases, after discussing sovereign immunity, the [c]ourt proceeded to examine whether the plaintiff stated a plausible *Monell* claim. And, in both cases, [the court] determined that the factual

12

> allegations contained in the complaints were insufficient to support a *Monell* claim against the BPD. Therefore, because [the] analysis regarding sovereign immunity was not outcome determinative, it was dicta.

*Grim*, No. 18-3864, 2019 WL 5865561 at *14 (D.Md. Nov. 8, 2019).[3] Judge Hollander went on to conclude, in line with numerous other district judges, that BPD is not a State agency for Eleventh Amendment immunity purposes because it is "too interconnected with the government" of the City of Baltimore. *Grim*, No. 18-3864, 2019 WL 5865561 at *15 (collecting cases). Accordingly, Defendant BPD is not immune from Plaintiff's federal claims and this court has subject matter jurisdiction.

### C. Count I – State Law False Imprisonment Claim

Count I asserts a false imprisonment claim against all Defendants, including Defendant BPD. (ECF No. 3, at 8-9 ¶¶ 38-54). Defendant BPD argues that "Plaintiff's state law false imprisonment claim fails because he did not, and now cannot, comply with the notice provisions of the Maryland Local Government Tort Claims Act." (ECF No. 19-1, at 14). In his response, Plaintiff voluntarily dismisses Count I against Defendant BPD. (ECF No. 35-1, at 16). The voluntary dismissal of one count in a multi-count suit constitutes an amendment to the pleadings. Therefore,

---

[3] The parties completed briefing for the motion to dismiss before the *Grim* decision. Defendant BPD was also a defendant in *Grim*.

13

Fed.R.Civ.P. 15 governs.  A party may amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a motion under Rule 12(b), whichever is earlier.  Fed.R.Civ.P. 15(a)(1).  Count I will be dismissed as to Defendant BPD.

**D.    Count VI – Racial Discrimination – Accommodations**

Count VI alleges that the casino "constitutes a place of public accommodation[]" and that "Plaintiff was profiled and singled out for his race."  (ECF No. 3, at 13 ¶ 78–83).  Count VI asserts liability against "all" Defendants, but not by name.  When Plaintiff filed the first amended complaint and added Defendant BPD to the action, Plaintiff did not add any additional factual allegations to Count VI.  Count VI of the original complaint, (ECF No. 1, at 13 ¶¶ 76–81), and Count VI of the first amended complaint, (ECF No. 3, at 13–14 ¶¶ 78–83), are identical.  Thus, the applicability of Count VI to Defendant BPD is unclear.  In its motion to dismiss, Defendant BPD highlights this uncertainty but assumes that Plaintiff alleged Count VI against it.  (ECF No. 19-1, at 2 n.2).  Plaintiff neither clarifies this point nor defends Count VI in his response. He does not even mention it.  Instead, the parties' briefing focuses on 42 U.S.C. §§ 1983 and 1985, while Count VI appears to allege a violation of 42 U.S.C. § 2000a.  Moreover, Count VI contains no factual allegations regarding

Defendant BPD. To the extent Plaintiff intended to include Defendant BPD in Count VI, it will be dismissed.

**E. Count X – Conspiracy to Violate Plaintiff's Civil Rights (42 U.S.C. § 1985) and Count XI - Violation of Civil Rights (42 U.S.C. §§ 1983, 1985, and 1988)**

Plaintiff brings Count X under 42 U.S.C. § 1985 and Count XI under 42 U.S.C. §§ 1983, 1985, and 1988. Under *Monell*, "a municipality is liable only for its *own* illegal acts[;]" a municipality is not vicariously liable for its employees' actions. *Owens*, 767 F.3d at 402 (emphasis in original). Accordingly, "a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Id.* "A plaintiff may allege four types of customs, policies, or practices: (1) the decisions of a government's lawmakers; (2) the acts of its policymaking officials; (3) a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights, known as a 'failure to train' claim; and (4) 'practices so persistent and widespread as to practically have the force of law,' known as a condonation claim." *Lucero v. Early*, No. 13-1036-GLR, 2019 WL 4673448 at *6 (D.Md. Sept. 25, 2019), *appeal docketed*, No. 19-2072 (4th Cir. Oct. 2, 2019) (internal citations omitted).

Plaintiff alleges that Defendant BPD "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Baltimore City[.]" (ECF

15

No. 3, at 16 ¶ 101). Plaintiff contends that BPD inadequately and improperly investigates warrantless arrests and citizen complaints of police misconduct, instead tolerating warrantless arrests and misconduct. (*Id.*, at 17 ¶ 102). Plaintiff argues Defendant BPD inadequately supervises and trains its police officers. (*Id.*, ¶ 103). Finally, Plaintiff contends that Defendant BPD illegally stations police officers at the Horseshoe Casino Baltimore and allows casino personnel to supervise and to direct police officers' investigations. (*Id.*, ¶ 105). The conclusory allegations regarding Defendant BPD's failure to train are insufficient. *See Milligan v. City of Newport News*, 743 F.2d 227, 230 (upholding the district court's dismissal of a plaintiff's *Monell* claim where the complaint alleged only that the City was "'grossly negligent' in failing. . . to train its personnel and that this exhibited 'callous disregard' for the [the plaintiff's] constitutional rights"). Similarly, the first amended complaint provides no allegations of "practices so persistent and widespread as to practically have the force of law" to support a condonation claim. The final allegation, however, that Defendant BPD in effect abdicated decision making responsibility to the casino staff to direct law enforcement actions of individual officers does allege a basis for municipal liability. Plaintiff alleges that Defendant BPD "has an illegal policy, custom[,] and/or practice" of allowing casino personnel to direct BPD police officers while casino

16

personnel investigate card counting and theft allegations. (ECF No. 3, at 17 ¶ 105). Allowing casino employees to direct BPD police officers in this manner "could constitute a policy of abdicating responsibility for protecting [Fourth Amendment] rights[.]" *Corral v. Montgomery Cty.*, 4 F.Supp.3d 739, 747-48 (D.Md. 2014) (denying in part a local government's motion to dismiss when police officers instructed two individuals, preaching their religious beliefs on a public sidewalk, to move across the street upon a private security guard's request). Plaintiff alleges that BPD Officer A approached him solely because Defendant Wright instructed him to do so. (*Id.*, at 5 ¶ 17). BPD Officer A informed Plaintiff "that he would need to accompany him to an office." (*Id.*). Plaintiff asked why he was being detained. (*Id.*, ¶ 18). The first amended complaint does not point to any appropriate justification to provide BPD Officer A reasonable suspicion or probable cause to detain Plaintiff. In fact, there is no indication in the first amended complaint that BPD Officer A had any independent reasons for detaining Plaintiff. The first amended complaint contains no suggestion that Plaintiff committed a crime. Plaintiff alleges that BPD Officer A's actions implicated his Fourth Amendment rights without appropriate justification and that BPD Officer A's lack of reasonable suspicion or probable cause stemmed from his reliance on directions from casino staff. Plaintiff has therefore stated a § 1983 claim against BPD.

Both Counts X and XI assert a violation of 42 U.S.C. § 1985.[4] The parties dispute the viability of a § 1985 claim against a local government and they both discuss *Bumgardner v. Taylor*, No. 18-1438-RDB, 2019 WL 1411059 (D.Md. Mar. 28, 2019). Defendant BPD was also a defendant in *Bumgardner* and raised an identical argument – "that it cannot be sued under § 1985 because neither the [Supreme Court of the United States nor the Fourth Circuit] have ever recognized a civil conspiracy claim against a municipal entity under § 1985." No. 18-1438-RDB, 2019 WL 1411059 at *4 (internal quotation marks omitted). Judge Bennett recognized the lack of binding appellate authority on the issue, assumed, without deciding, that BPD was a person subject to suit under § 1985, and dismissed the claims against BPD on other grounds. *Id.* at *4–5. Despite their disagreement about the availability of a § 1985 cause of action against a municipal entity, the parties appear to agree that the same definition of "person" applies to both § 1983 and § 1985 claims. (ECF No. 19-1, at 8 n.5; ECF No. 35-1, at 15–16). As discussed *supra*, Defendant BPD is a person subject to § 1983 liability. Assuming without deciding that municipalities are

---

[4] Count X asserts a conspiracy claim under § 1985 and Count XI asserts a civil rights violation claim under §§ 1983, 1985, and 1988. The parties do not raise or brief the viability of a § 1983 conspiracy claim against Defendant BPD and the court will therefore not address it.

18

subject to suit under § 1985, Plaintiff nevertheless fails to state a claim.

Although not specified by subsection, Count X appears to allege violations of 42 U.S.C. § 1985(3). (*See* ECF No. 3, at 16 ¶ 98 ("Defendants acted in concert and conspired to violate Plaintiff's federal civil rights to be free from unreasonable seizures.")). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995).

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Plaintiff failed to allege that a "class-based, invidiously discriminatory animus" motivated Defendant BPD. Nothing in the record supports such an inference. Plaintiff identifies himself as African American, (ECF No. 3, at 13 ¶ 79), and identifies the races of BPD Officer A, BPD Officer B, and other BPD officers he observed throughout the evening. Mere identification of "the respective racial identities of the individuals involved[]" is insufficient to allege the racial animus required under § 1985(3). *Gooden v. Howard Cty.*, 954 F.2d. 960, 970 (4th Cir. 1992); *see also*

*Lucas v. Henrico Cty. Pub. Sch. Bd.*, No. 18-cv-402-HEH, 2019 WL 5791343, at *12 n.20 (E.D.Va. Nov. 6, 2019). Claims under § 1985 will be dismissed as to Defendant BPD.

Finally, 42 U.S.C. § 1988 is a fee-shifting provision and does not create an independent cause of action. *Moor v. Alameda Cty.*, 411 U.S. 693, 702 (1973) ("Section 1988 does not enjoy the independent stature of 'an Act of Congress providing for the protection of civil rights,' . . . the section is intended to complement the various acts which do create federal causes of action[.]"); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 n.66 (1978) ("42 U.S.C. § 1988 cannot be used to create a federal cause of action where § 1983 does not otherwise provide one[.]"). Similarly, Count XII, for Injunctive Relief, is not a cause of action. Count XII will be dismissed as to Defendant BPD.

## V. Conclusion

For the foregoing reasons, the motion for entry of default will be denied and the motion to dismiss will be denied in part and granted in part. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge